Juan VALDEZ, Plaintiff–Appellant,

v.

Mark A. ROSENBAUM; Al Terrault; Julie Latuska; Bill Parker; George Gore; Debbie Miller; Allen Cooper, Defendants–Appellees.

No. 01–35300.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted April 3, 2002.*

Filed Sept. 5, 2002.

* Valdez was well represented in this appeal by Mr. Daniel R. Anderson and Ms. Katherine C. Ball, law students from the University of Idaho College of Law. The court thanks them for their excellent work.

Daniel R. Anderson and Katherine C. Ball, Law Students, University of Idaho College of Law, Moscow, ID, for the appellant.

Richard L. Pomeroy, Assistant United States Attorney, Anchorage, AK, and Mar-

ilyn J. Kamm, Assistant Attorney General, Juneau, AK, for the appellees.

Before: D.W. NELSON, THOMPSON and PAEZ, Circuit Judges.

DAVID R. THOMPSON, Circuit Judge.

In this civil rights action, Juan Valdez alleges that his constitutional rights were violated during his pretrial detention in the Alaska Cook Inlet Pretrial Facility ("CIPT"). Valdez was a federal detainee who was held in CIPT pursuant to an agreement between the state of Alaska and the U.S. Marshal Service. After he was convicted in federal court, Valdez filed this suit against Assistant U.S. Attorney Mark A. Rosenbaum ("Rosenbaum") and various Alaska state officials and CIPT administrators ("state officials"), alleging that they had imposed unlawful restrictions on his telephone access during four-and-a-half months of his pretrial detention. Valdez invokes the First, Sixth, and Fourteenth Amendments to the United States Constitution. We hold that there was no deprivation of Valdez's constitutional rights and, therefore, affirm the district court's grant of summary judgment in the defendants' favor.

## I. *Factual and Procedural Background*

Valdez was the leader of a drug smuggling conspiracy that brought large amounts of cocaine into Alaska. He was tried and convicted in federal court of various drug trafficking charges and sentenced to thirty years in prison. This court affirmed his conviction on May 7, 2001.

*United States v. Marin,* 8 Fed.Appx. 815 (9th Cir.2001).[1]

This lawsuit arises from the conditions of Valdez's pretrial detention in CIPT which began on or about September 23, 1998. While in detention, Valdez was initially placed in the jail's general population where he shared access to four telephones. However, on October 20, 1998, Rosenbaum, the federal prosecutor on the case, sent a letter to the U.S. Marshal requesting that Valdez's telephone access be suspended. The letter stated in pertinent part:

Tomorrow, it is anticipated that the present indictment will be superceded to add five new defendants, none of whom are presently in custody. In order to further insure the safety of law enforcement personnel who will be seeking to serve arrest warrants on the new codefendants, we are requesting that Mr. [Valdez's] telephone privileges be suspended until all have been apprehended. Since Mr. [Valdez] will know about the superceding indictments before the warrants can be served, I am sure you can readily see how telephone notice to these other individuals in advance could present a potentially dangerous situation to those seeking to execute the warrants.

In response to this request, the state officials placed Valdez in administrative segregation. While in administrative segregation, Valdez was not permitted to make or receive any telephone calls, save a daily telephone call with his attorney. In order to call his attorney, Valdez had to submit a written request. Notwithstanding these restrictions, Valdez was still permitted to confer with his attorney in per-

---

1. During his criminal proceedings, Valdez was known as Indalecio Marin, one of his many aliases.

son at the jail and receive in-person visits by friends and family.

The day after the telephone restriction was imposed, two of Valdez's five co-defendants were arrested. A third co-defendant was arrested approximately two months later in December, 1998. The other two remained fugitives during the relevant times of this case. Valdez's telephone restriction continued for approximately four-and-a-half months until about a week after one of the captured co-conspirators, Susana Cruz, was released on bail on February 24, 1999. On March 1, 1999 Rosenbaum mailed a letter to the U.S. Marshal requesting that the telephone restriction be lifted. In the letter, Rosenbaum stated that: "although two co-defendants remain in a fugitive status, the fact that another has been released on bail renders the restriction of Mr. [Valdez's] telephone privileges moot." Valdez's telephone privileges were restored on March 4, 1999.

After he was convicted, Valdez filed this *pro se* civil rights action against Rosenbaum and the state officials. His claims against the state officials were brought under 42 U.S.C. § 1983, and his claims against Rosenbaum were brought pursuant to *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics,* 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971). He alleged that the pretrial telephone restriction violated his constitutional rights to (1) procedural due process, (2) substantive due process, (3) freedom of speech, (4) effective assistance of counsel, and (5) equal protection.

The district court, adopting the recommendations of the magistrate judge, determined there was no genuine issue of material fact in dispute and concluded that, although Valdez's constitutional rights had been violated, the defendants were entitled to qualified immunity. The court entered judgment in favor of the defendants and Valdez filed this timely appeal. We have jurisdiction under 28 U.S.C. § 1291. We affirm on the ground that Valdez's constitutional rights were not violated.

## II. *Standard of Review*

■ We review de novo the district court's grant of summary judgment. *Delta Sav. Bank v. United States,* 265 F.3d 1017, 1021 (9th Cir.2001), *cert. denied,* —— U.S. ——, 122 S.Ct. 816, 151 L.Ed.2d 700 (2002). We are governed by the same standard used by the district court under Rule 56(c) of the Federal Rules of Civil Procedure. *Id.* Thus, we must determine, viewing the evidence in the light most favorable to Valdez, whether there are any genuine issues of material fact and whether the district court correctly applied the relevant substantive law. *Id.* We may affirm the district court's judgement on any basis supported by the record. *Venetian Casino Resort, L.L.C. v. Local Joint Executive Bd. of Las Vegas,* 257 F.3d 937, 941 (9th Cir.2001), *cert. denied,* —— U.S. ——, 122 S.Ct. 1204, 152 L.Ed.2d 142 (2002).

## III. *Discussion*

### A. *The Sequence of Analysis*

■ Our discussion begins with the two-step sequence of analysis set forth by the Supreme Court in *Saucier v. Katz,* 533 U.S. 194, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001). First, we ask whether the facts Valdez alleged show that the defendants violated his constitutional rights. *Id.* at 207, 121 S.Ct. 2151 (instructing federal courts not to assume the existence of a constitutional right even if it is clear that the defendants would be entitled to qualified immunity). If we answer that question in the negative, no further analysis is necessary. If, on the other hand, we answer that question in the affirmative, we then consider whether the defendants are entitled to qualified immunity. *See id.* at 201, 207, 121 S.Ct. 2151; *Robinson v. Sola-*

*no County*, 278 F.3d 1007, 1013 (9th Cir. 2002) (en banc) (explaining that "we must ask first whether the facts taken in the light most favorable to the plaintiff would establish a [constitutional] violation. . . . Only if the answer is in the affirmative should we address the immunity issue.").

■ Valdez attempts to short-circuit this analysis by arguing that the only issue on appeal is whether the defendants are entitled to qualified immunity. He contends the defendants' failure to cross-appeal precludes them from challenging the district court's conclusion that they violated his constitutional rights. That is incorrect. As the prevailing parties, the defendants need not have filed cross-appeals in order to correct errors in the district court's reasoning nor to preserve alternative grounds for affirming the judgment. *Lee v. Burlington N. Santa Fe Ry. Co.*, 245 F.3d 1102, 1107 (9th Cir.2001); *Rodrigues v. Herman*, 121 F.3d 1352, 1355 n. 2 (9th Cir.1997). Accordingly, we consider the merits of Valdez's claims and conclude that the defendants did not violate any of

his constitutional rights. We do not reach the qualified immunity issue.

### B. *Procedural Due Process*

■ Valdez contends that the telephone restriction violated his constitutional right to procedural due process because Alaska law creates a constitutionally-protected liberty interest in a prisoner's access to a telephone.[2] We disagree.

■ A state law must satisfy two requirements in order to create a liberty interest protected by the Constitution. First, the law must set forth " 'substantive predicates' to govern official decision making" and, second, it must contain "explicitly mandatory language," *i.e.*, a specific directive to the decisionmaker that mandates a particular outcome if the substantive predicates have been met. *Kentucky Dep't of Corrections v. Thompson*, 490 U.S. 454, 462–63, 109 S.Ct. 1904, 104 L.Ed.2d 506 (1989) (quoting *Hewitt v. Helms*, 459 U.S. 460, 472, 103 S.Ct. 864, 74 L.Ed.2d 675 (1983)).[3]

---

**2.** We reject the defendants' assertion that Valdez waived this issue by failing to raise it in the district court. In fact, Valdez raised the issue and cited the relevant Alaska statute at virtually every stage in this litigation. While Valdez did not frame the issue precisely as he has done in this appeal, we liberally construe pleadings in civil rights cases. *Buckey v. County of Los Angeles*, 968 F.2d 791, 794 (9th Cir.1992).

  We also consider Valdez's due process claims as being asserted against the state defendants under the Fourteenth Amendment and against the federal defendant, Rosenbaum, under the Fifth Amendment.

**3.** The Supreme Court criticized and curtailed this methodology in *Sandin v. Conner*, 515 U.S. 472, 115 S.Ct. 2293, 132 L.Ed.2d 418 (1995). In *Sandin,* the Court announced a new test to determine when state law creates a protected liberty interest in the prisoner context: "[T]hese interests will be generally limited to freedom from restraint which . . .

imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Id.* at 484, 115 S.Ct. 2293. *Sandin's* reasoning applied particularly to *convicted* prisoners, however, whose incarceration "serves different aims" than pretrial detainees like Valdez. *Id.* at 485, 115 S.Ct. 2293. In addition, the Court explicitly declined to overrule its prior decisions. *Id.* at 484 n. 5, 115 S.Ct. 2293. Accordingly, we apply the *Thompson/Hewitt* test. *See Carlo v. City of Chino*, 105 F.3d 493, 498–499 (9th Cir.1997); *Mitchell v. Dupnik*, 75 F.3d 517, 523–25 (9th Cir.1996); *cf. Resnick v. Hayes*, 213 F.3d 443, 448 (9th Cir.2000) (applying *Sandin's* analysis to inmate who has been convicted but not yet sentenced). *Accord Benjamin v. Fraser*, 264 F.3d 175, 188–189 (2d Cir.2001); *Fuentes v. Wagner*, 206 F.3d 335, 342 n. 9 (3rd Cir.2000); *Whitford v. Boglino*, 63 F.3d 527, 531 n. 4 (7th Cir.1995).

■ The applicable Alaska statute provides:

> A prisoner shall have reasonable access to a telephone except when access is suspended as punishment for conviction of a rule infraction or pending a hearing for a rule infraction involving telephone abuse. A suspension under this subsection must be reasonable in length and may not prohibit telephone communication between the prisoner and an attorney or between the prisoner and the office of the ombudsman.

Alaska Stat. § 33.30.231(a) (2000). This statute does not mandate a particular outcome. It merely entitles a prisoner to "reasonable access" to a telephone, and provides prison officials with discretion to determine *what* is reasonable access under the circumstances. Accordingly, an inmate is not entitled "to form an objective expectation" of entitlement to telephone usage such that he could "reasonably expect to enforce [the statute] against the prison officials." *Thompson*, 490 U.S. at 464–65, 109 S.Ct. 1904 (holding that the statute did not mandate a particular outcome where prison officials retained discretion to deny visitation rights). The Alaska statute is distinguishable from the statute at issue in *Carlo v. City of Chino*, 105 F.3d 493 (9th Cir.1997). There, the state law mandated a particular outcome because it explicitly entitled arrestees to make at least three telephone calls within three hours of arrest. *Id.* at 495–96.

Our construction of the statute is consistent with its accompanying administrative regulation, which is also couched in discretionary terms. The regulation provides that the prison superintendent "may limit a prisoner's access to a telephone, except to call an attorney, if reasonable grounds exist to believe that the prisoner's use of a telephone threatens … the protection of the public." ALASKA ADMIN. CODE tit.22, § 05.530 (2002). Here, the defendants exercised the discretion provided by this regulation and determined that reasonable grounds existed to restrict Valdez's telephone access.

We conclude that Valdez did not have a state-created liberty interest in using a telephone during his pretrial confinement. Accordingly, his procedural due process claims fail.

### C. *Substantive Due Process*

Valdez next asserts that the restriction on his use of a telephone amounted to the denial of substantive due process because it constituted punishment.

■ Pretrial detainees have a substantive due process right against restrictions that amount to punishment. *United States v. Salerno*, 481 U.S. 739, 746, 107 S.Ct. 2095, 95 L.Ed.2d 697 (1987); *Bell v. Wolfish*, 441 U.S. 520, 535, 99 S.Ct. 1861, 60 L.Ed.2d 447 (1979); *Redman v. County of San Diego*, 942 F.2d 1435, 1440–41 (9th Cir.1991) (en banc). This right is violated if restrictions are "imposed for the purpose of punishment." *Bell*, 441 U.S. at 535, 99 S.Ct. 1861. There is no constitutional infringement, however, if restrictions are "but an incident of some other legitimate government purpose." *Id.* In such a circumstance, governmental restrictions are permissible. *Salerno*, 481 U.S. at 747, 107 S.Ct. 2095.

In distinguishing between a permissible restriction and impermissible punishment, we first examine whether the restriction is based upon an express intent to inflict punishment. *Id.* Here, there is no indication of such an express intent.

■ We next consider whether punitive intent can be inferred from the nature of the restriction. This determination will generally turn upon " 'whether an alternative purpose to which [the restriction] may rationally be connected is assignable for it, and whether [the restric-

tion] appears excessive in relation to the alternative purpose assigned [to it].'" *Bell,* 441 U.S. at 539, 99 S.Ct. 1861(quoting *Kennedy v. Mendoza–Martinez,* 372 U.S. 144, 168–69, 83 S.Ct. 554, 9 L.Ed.2d 644 (1963)) (alterations in original). Put more simply, "if a particular condition or restriction of pretrial detention is reasonably related to a legitimate governmental objective, it does not, without more, amount to 'punishment.'" *Bell,* 441 U.S. at 539, 99 S.Ct. 1861.

█ Applying this test, we first look to the governmental interest in restricting Valdez's telephone access. The telephone restriction was imposed to prevent Valdez from tipping off his co-conspirators about the recently-issued indictments and, thereby, to ensure their capture with minimal danger to the arresting officers. The government has a legitimate interest in ensuring the safety of police officers when executing arrests and in preventing a detainee from helping his co-conspirators elude arrest. *See Jackson v. City of Bremerton,* 268 F.3d 646, 652 (9th Cir.2001); *Ruvalcaba v. City of Los Angeles,* 64 F.3d 1323, 1327 (9th Cir.1995); *United States v. El–Hage,* 213 F.3d 74, 81 (2d Cir.2000).

█ We next consider whether the restriction was reasonably related to this interest, or whether, as Valdez argues, the restriction constituted an "exaggerated response." A reasonable relationship between the governmental interest and the challenged restriction does not require an "exact fit," *Mauro v. Arpaio,* 188 F.3d 1054, 1060 (9th Cir.1999) (en banc), nor does it require showing a "least restrictive alternative." *Thornburgh v. Abbott,* 490 U.S. 401, 410–12, 109 S.Ct. 1874, 104 L.Ed.2d 459 (1989). Otherwise, " 'every administrative judgment would be subject to the possibility that some court somewhere would conclude that it had a less restrictive way of solving the problem at hand.'" *Thornburgh,* 490 U.S. at 410–11,

109 S.Ct. 1874(quoting *Turner,* 482 U.S. at 89, 107 S.Ct. 2254). "Moreover, it does not matter whether we agree with the defendants or whether the policy in fact advances the jail's legitimate interests. The only question that we must answer is whether the defendants' judgment was 'rational,' that is, whether the defendants might reasonably have thought that the policy would advance its interests." *Mauro,* 188 F.3d at 1060 (citation omitted).

█ The defendants have met this standard. Valdez was suspected of being the organizer of a large-scale drug-smuggling conspiracy that employed people throughout the country. His co-conspirators were still at large and had recently been indicted when the restriction was put in place. Restricting Valdez's telephone access prevented him from calling his co-conspirators to warn them of their impending arrests. The telephone restriction was reasonably related to the government's legitimate interest.

We are further persuaded that the defendants acted without punitive intent because the restriction was only in place for a short time and only for as long as it served its stated purpose. *See Salerno,* 481 U.S. at 747–48, 107 S.Ct. 2095; *Bell,* 441 U.S. at 543, 99 S.Ct. 1861. Valdez had access to a telephone during the first 36 days of his confinement. The telephone restriction was not imposed until his co-conspirators were about to be indicted, and the restriction was kept in place because two of his co-conspirators remained at large. Shortly after a third co-conspirator, Cruz, was released on bail, Valdez's telephone access was restored because, with Cruz back on the street, the restriction was rendered moot.

Valdez contends the initial 36 days of unrestricted telephone access is evidence of punitive intent in thereafter restricting his telephone usage. According to Valdez,

this 36 days of unrestricted access shows that the subsequent restriction did not bear a reasonable relationship to the government's purported objective because he had had plenty of time to contact his cohorts if he had wanted to do so. We are unpersuaded by this argument because it actually supports the defendants' position—the fact that the restriction was not imposed until Valdez's co-conspirators were about to be indicted shows an *absence* of punitive intent.

Valdez also points out that the defendants did not impose similar telephone restrictions on his three co-conspirators when they were arrested. He argues that if the justification for his restriction was to prevent other members of the conspiracy from learning of pending arrests, then restricting only him from using the telephone, except to talk with his attorney, was an unreasonable method of accomplishing this goal. Valdez, however, was the suspected leader of the drug-smuggling conspiracy. As such, it was reasonable to assume that he was more likely than the others to warn his cohorts of their impending arrests.

Valdez further contends we should infer that Rosenbaum acted with punitive intent because of the manner in which he authorized the restoration of Valdez's telephone access. After co-conspirator Cruz was released on bail on February 24, 1999, Rosenbaum mailed a letter to the U.S. Marshal requesting that Vasquez's telephone restriction be rescinded. The letter was dated March 1, and Valdez's telephone access was restored on March 4. According to Valdez, Rosenbaum acted with punitive intent because he rescinded the restriction via U.S. mail, the "slowest method possible," rather than sending a fax or telephoning the Marshal. We disagree. Failure to use the fastest, or even a faster, means of communication provides no evi-

dence of punitive intent when the method used was not unusual—here, the U.S. mail.

Finally, Valdez relies upon *Hallstrom v. City of Garden City*, 991 F.2d 1473 (9th Cir.1993) in support of his argument that the telephone restriction constituted punishment. This reliance is misplaced. In *Hallstrom*, the plaintiff was pulled over for a traffic violation and refused to provide her driver's license to the police officer. She was taken into custody, but refused to answer routine booking questions. As a result, she was jailed for six days until she complied with booking procedures. She filed a civil rights suit, contending that the incarceration itself amounted to punishment. We reversed summary judgment for the defendants and concluded there was a genuine issue of material fact as to whether she was incarcerated to inflict punishment and to coerce her into complying with booking procedures. We explained that "[w]hile the government has a legitimate interest in orderly booking, this interest does not command as high of a priority, for example, as ensuring presence at trial or maintaining jail security." *Id.* at 1485. By contrast, the governmental interest in the present case—ensuring safety of arresting officers—commands a high priority, and the restriction was reasonably related to accomplishing that objective.

We conclude that the restriction on Valdez's telephone access did not constitute punishment. There was no substantive due process violation.

### D. *Freedom of Speech*

Valdez next contends that the restriction on his telephone usage violated his right to freedom of speech under the First Amendment. We have previously "stated in dicta that 'prisoners have a First Amendment right to telephone access, subject to reasonable security limitations.'" *Halvorsen v. Baird*, 146 F.3d, 680, 689 (9th Cir.1998)

(quoting *Keenan v. Hall,* 83 F.3d 1083, 1092 (9th Cir.1996)); *see also Johnson v. California,* 207 F.3d 650, 656 (9th Cir. 2000); *Strandberg v. City of Helena,* 791 F.2d 744, 747 (9th Cir.1986). The genesis of this purported constitutional right to use a telephone is obscure. *See Halvorsen,* 146 F.3d at 689. Our cases have not identified the source of the right, and our pronouncements of its existence have been conclusory and unnecessary to the decisions.

■ While it is clear that the First Amendment right of free speech applies within prison walls, *see, e.g., Thornburgh,* 490 U.S. at 407, 109 S.Ct. 1874, this case requires us to consider the contours of that right. In doing so, "the right in question must be viewed sensibly and expansively." *Id.* at 417, 109 S.Ct. 1874. In *Thornburgh,* the Court considered whether prison regulations that permitted the warden to preclude prisoners from receiving certain publications infringed upon their First Amendment right of free speech. The Court broadly characterized the right at issue, determined that alternative means of exercising the right remained available because prisoners could continue to send, receive and read other publications, and held there was no First Amendment violation. *Id.* at 417–18, 109 S.Ct. 1874. Other Supreme Court and circuit court cases are consistent with this form of analysis. *See, e.g., O'Lone v. Estate of Shabazz,* 482 U.S. 342, 351–52, 107 S.Ct. 2400, 96 L.Ed.2d 282 (1986) (no violation of prisoners' free exercise right where, although they were precluded from participating in a particular religious ceremony, they were free to perform other rituals of their religion); *Turner v. Safley,* 482 U.S. 78, 92, 107 S.Ct. 2254, 96 L.Ed.2d 64 (1986) (no violation of prisoners' free speech right where, although they were precluded from communicating with fellow prisoners, the "regulation [did] not deprive prisoners of all means of expression");

*Mauro,* 188 F.3d at 1061(characterizing the First Amendment right as the "right to receive sexually explicit communications" and holding that regulations banning prisoners from receiving sexually explicit pictures did not infringe on this right because, among other reasons, prisoners were free to read sexually explicit letters and articles).

The Eleventh Circuit followed this approach in a case involving prisoners' access to telephones. In *Pope v. Hightower,* 101 F.3d 1382 (11th Cir.1996), a prisoner challenged a prison regulation that limited the number of people whom prisoners could telephone. The district court concluded that the regulation infringed upon the prisoner's First Amendment right. The Eleventh Circuit reversed. The appeals court "sensibly and expansively" characterized the First Amendment right as the "right to communicate with family and friends." *Id.* at 1385. The court then applied the four-factor *Turner* inquiry (discussed below) and concluded that there was no First Amendment violation since, among other reasons, the prisoner had an "alternative means of exercising[the right] because he could receive visitors and correspond with virtually anyone he wished." *Id.*

We find *Pope's* reasoning persuasive. We "sensibly and expansively" define the First Amendment right at issue in this case as the right to communicate with persons outside prison walls. Use of a telephone provides a *means* of exercising this right.

■ Having defined the constitutional right at issue, we next consider whether the restriction on Valdez's telephone usage violated this right. A prison regulation that impinges on an inmate's constitutional right "is valid if it is reasonably related to legitimate penological interests." *Turner,* 482 U.S. at 89, 107 S.Ct. 2254. In making the "reasonableness" inquiry, we consider the four factors articu-

lated in *Turner:* (1) whether there is a valid, rational connection between the restriction and the legitimate governmental interest put forward to justify it; (2) whether there are alternative means of exercising the right; (3) whether accommodating the asserted constitutional right will have a significant negative impact on prison guards and other inmates, and on the allocation of prison resources generally; and (4) whether there are obvious, easy alternatives to the restriction showing that it is an exaggerated response to prison concerns. *Id.* at 89–90, 107 S.Ct. 2254; *Mauro,* 188 F.3d at 1058–59.

We address these factors in turn. First, we have already determined in connection with Valdez's substantive due process claim that the telephone restriction was rationally related to a legitimate governmental interest. Second, Valdez had alternative means of exercising his right to communicate with persons outside the prison walls. He could receive visitors at the jail and could send and receive mail. He could also communicate daily with his attorney by telephone and in person. Third, allowing Valdez telephone access would have required the defendants to allocate additional resources to monitor his telephone conversations to ensure that he did not try to tip off his cohorts. Finally, there were no obvious, easy alternatives to the telephone restriction which would indicate that the restriction was an exaggerated response. We conclude the telephone restriction did not violate the First Amendment.

### E. *Additional Claims*

In the district court, Valdez asserted a violation of the Equal Protection Clause. He has not raised that claim on appeal and has, therefore, waived it. *See Paciulan v. George,* 229 F.3d 1226, 1230 (9th Cir.2000), *cert. denied,* 531 U.S. 1077, 121 S.Ct. 775, 148 L.Ed.2d 673 (2001).

Valdez also raises a Sixth Amendment claim, asserting that the requirement that he obtain permission to telephone his attorney made it practically impossible to have a telephone conversation with his attorney. We do not reach the merits of this claim because it is not cognizable under *Heck v. Humphrey,* 512 U.S. 477, 114 S.Ct. 2364, 129 L.Ed.2d 383 (1994). The claim would necessarily imply the invalidity of Valdez's subsequent conviction. *See id.* at 486–87, 114 S.Ct. 2364; *Trimble v. City of Santa Rosa,* 49 F.3d 583, 585 (9th Cir. 1995). Consequently, the claim is not cognizable in this litigation, but may be asserted in a petition for a writ of habeas corpus on Sixth Amendment grounds.

### IV. *Conclusion*

Valdez's constitutional rights were not violated; thus, we need not address whether the defendants were entitled to qualified immunity. The district court's grant of summary judgment in favor of the defendants is AFFIRMED.