Homo v. Merrimack Cty. DOC          CV-01-260-JD  01/10/03

UNITED STATES DISTRICT COURT FOR THE
                         DISTRICT OF NEW HAMPSHIRE


Lawrence R. Homo

       v.                                Civil No. 01-260-JD
                                         Opinion No. 2003 DNH 004
Merrimack County Department
of Corrections, et al.


                              O R D E R


     The plaintiff, Lawrence R. Homo, proceeding pro se, brings a
civil rights action against the Merrimack County Department of
Corrections ("the jail"), Superintendent Carole Anderson, and
Assistant Superintendent Richard Doucet.  Homo's claims arise
from alleged constitutional violations during his incarceration
at the jail from July 8 to July 17, 1998, on a civil contempt
order issued by the Merrimack County Superior Court.  The
defendants move for summary judgment, and Homo objects.


                          Standard of Review

     Summary judgment is appropriate when "the pleadings,
depositions, answers to interrogatories, and admissions on file,
together with the affidavits, if any, show that there is no
genuine issue as to any material fact and that the moving party
is entitled to a judgment as a matter of law."  Fed. R. Civ. P.
56(c).  The party seeking summary judgment must first demonstrate

the absence of a genuine issue of material fact in the record. See Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). A party opposing a properly supported motion for summary judgment must present competent evidence of record that shows a genuine issue for trial. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986). All reasonable inferences and all credibility issues are resolved in favor of the nonmoving party. See id. at 255.

## Background

On July 8, 1998, the Merrimack County Superior Court found Homo to be in contempt of court orders issued in December of 1998 and September of 1990, which enjoined him from storing certain materials on his property. The court ordered Homo to be incarcerated until he prepared a written plan describing, to the court's satisfaction, how and when he would remove the enjoined materials from his property. He was transported to the jail on July 8, 1998. Homo represented himself throughout the contempt proceeding.

Upon arrival, Homo was taken to administrative processing. He was interviewed by Richard Doucet. Homo refused to be fingerprinted or photographed, as part of the intake procedure. Homo states that he did not want to sign the fingerprinting card without first consulting with an attorney. He was not offered a

2

telephone to make a call, and no telephone was available for his use during the intake process.

Because he refused to comply with the required intake procedures, Homo was housed in administrative segregation. He was taken from the intake area to Dayroom #3 and then put into a cell. Inmates in administrative segregation are permitted one hour per day in the common area where a telephone is available for inmates to use. Homo states that he was unable to make a telephone call on July 8 or 9, although a telephone was located in the common area just outside of his cell.

On July 9, although Homo was not yet fully processed, he was inadvertently moved to the general prison population. The mistake was corrected the next day, July 10, and Homo was moved back to administrative segregation. While he was in the general population, Homo had access to books, paper, pens and pencils, the law library, and the telephone.

Homo submitted a computer-generated and signed proposed plan to the court on July 15. The court rejected the July 15 plan because it included a provision to reserve Homo's right to meet with the town administrator to discuss the plan and to discuss what materials on the property constituted junk. On July 17, Homo filed a revised plan to clean up his property, which was also computer-generated and signed. The court accepted the

3

revised plan and ordered Homo's release on the same day, July 17.

Homo states that he was not permitted to have visitors during his incarceration. He also states that he did not have access to a pen, pencil, paper, or stamps and, therefore, could not draft the plans himself. He did not see his son when he brought the plans to the jail for him to sign. Instead, his son gave the plans to a guard who brought the plans to Homo, and the guard loaned him a pen to use to sign the plans. Homo also states that while he was in administrative segregation, he did not have access to all of his legal papers and he was not permitted access to the law library.

## Discussion

Homo alleges civil rights claims under 42 U.S.C. §§ 1983, 1985, 1986, and 1988, arising from his incarceration. His claims are based on his lack of access to a telephone, the denial of access to his legal papers, the lack of a pencil or pen and paper, the lack of access to the law library, and incarceration in administrative segregation. Because his claims against Anderson and Doucet are brought in both their individual and official capacities, he has also alleged claims against the jail.[1] The defendants move for summary judgment.

---

[1]A claim brought against a public officer in her official capacity is "another way of pleading an action against an entity

4

A.  Access to Telephone

Homo contends that his lack of access to a telephone on July 8 and 9 violated his First and Sixth Amendment rights.  In their motion for summary judgment, the defendants acknowledge that Homo had "a well-established right to use of a phone while incarcerated at the [jail]."[2]  Motion at 6.  They assert, however, that Homo had access to a telephone in Dayroom #3, where he was taken before being placed in his cell on July 8 and again, on July 9, when he was put into the general population.

Homo generally asserts that he was denied access to a telephone but does not dispute the specific facts provided by the defendants.  He does not claim that he lacked access to a telephone after July 9.  Under these circumstances, the defendants are entitled to summary judgment on Homo's claims arising from telephone access.

---

of which an officer is an agent."  Kentucky v. Graham, 473 U.S. 159, 165 (1985); accord Burrell v. Hampshire County, 307 F.3d 1, 7 (1st Cir. 2002).

[2]The defendants cite no legal authority in support of the "well-established right" to use a telephone.  Cf. Valdez v. Rosenbaum, 302 F.3d 1039, 1048 (9th Cir. 2002) (discussing First Amendment right to telephone use in prison).  Since Homo willingly proceeded pro se during the civil contempt proceeding and presents no facts that would suggest that the intake procedure implicated his Sixth Amendment right to counsel, he fails to state a claim under the Sixth Amendment.  See, e.g., Texas v. Cobb, 522 U.S. 162, 166-67 (2001); Davis v. United States, 512 U.S. 452, 456-57 (1994).

B.   Access to the Law Library, Writing Materials, and Legal
     Papers

     Prisoners have a constitutional right to access the courts.
Bounds v. Smith, 430 U.S. 817, 821 (1977).  A prisoner's right to
access the courts includes the opportunity to prepare and file
meaningful legal papers through access to "'adequate law
libraries or adequate assistance from persons trained in the
law.'"  Boivin v. Black, 255 F.3d 36, 42 (1st Cir. 2000).  Denial
of access to the courts is not actionable, however, unless the
litigant claims "an opportunity yet to be gained or an
opportunity already lost."  Christopher v. Harbury, 122 S. Ct.
2179, 2186 (2002).

     The defendants correctly point out that Homo has not alleged
that he lost any opportunity to access the courts due to the
claimed lack of access to the law library, writing materials, and
his legal papers.  Instead, the record shows that Homo
effectively filed two plans with the Merrimack County Superior
Court, while he was incarcerated.  Therefore, the defendants are
entitled to summary judgment on Homo's claims arising from an
alleged deprivation of access to the courts.


C.   Visitation Rights

     Homo contends that he was deprived of visitation rights
because he had not filled out a visitation card.  He states that

6

he did not fill out a visitation card because he lacked a pen or pencil to do so. Homo argues that the deprivation of visitors violated his First Amendment rights.

The defendants do not contest the legal basis for Homo's claim. Instead, they argue that the record shows that Homo had access to a pen or pencil since he signed the plans that were filed with the court. Homo does not dispute that a guard gave him a pen to sign his plans. He also does not contend that he asked to use a pen or pencil to complete a visitor form and was refused. Therefore, based on the record facts, no triable issue remains as to whether Homo was denied visitation rights due to the lack of writing instruments.

D. Placement in Administrative Segregation

Homo alleges that the defendants' decision to place him in administrative segregation because he refused to comply with the fingerprinting and photograph parts of the intake procedure violated his Fourteenth Amendment right to due process based on an infringement of his liberty interests. He also contends that the confinement violated his Eighth Amendment right to be free of cruel and unusual punishment.

"It is well established that inmates do not have a right under the Constitution itself to remain in the general population or to be free from administrative segregation." Rodi v.

7

Ventetuolo, 941 F.2d 22, 25 (1st Cir. 1991) (citing Hewitt v. Helms, 459 U.S. 460, 467-68 (1983)).  In addition segregated confinement does not violate the Eighth Amendment prohibition against cruel and unusual punishment.  See, e.g., Rhodes v. Chapman, 452 U.S. 337, 347 (1981); Jackson v. Meachum, 699 F.2d 578, 581-83 (1st Cir. 1983); O'Brien v. Moriarty, 489 F.2d 941, 944 (1st Cir. 1974).  Since Homo offers no facts that would raise issues of constitutional violation due to his confinement in administrative segregation, the defendants are entitled to summary judgment on those claims.

## Conclusion

For the foregoing reasons, the defendants' motion for summary judgment (doc. no. 15) is granted.  The clerk of court shall enter judgment accordingly and close the case.

SO ORDERED.

_____
Joseph A. DiClerico, Jr.
United States District Judge

January 10, 2003

cc:  Lawrence R. Homo Sr., pro se
     Charles P. Bauer, Esquire

8