**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

JAMES MICHAEL MYRON,
           *Plaintiff-Appellant,*

and

JAMES M. LANDSBERGER; DWAYNE
DELUNA; RICK CESARO,
                    *Plaintiffs,*

v.

CAL TERHUNE; GARY LINDSEY; G.E.
HARRIS; EDWARD L. YLST; ALFONSO
K. FILLION; D.A. MAYLE; CARL
LARSEN; A.A. LAMARQUE; P.
HAMILTON; A. SOLIS; J. BASSO; P.
MANDEVILLE; P. CARILLO; A.
ALEXANDER; R. PADILLA; S.
SHIPMAN; P. MARRIOTT; DON
CHESTERMAN; JOHN H. BURK; R.
PERALEZ; B. WHITE; BURKE; C.
PICKERING; DUCK; RITA CLAYTON; J.
THOMPSON; SMITH; C. MORENO;
TANN; V. BARRON; RINGS; HILL;
DAVIS; KILPATRICK; E. DONNELLY;
PUIG; DAVIS, Dr.; M.S. MADISON;
KUENZI, Dr.; PARKINSON, Dr.;
WITTENBERG, Dr.,
                *Defendants-Appellees.*

No. 04-15770

D.C. No.
CV-99-21265-JW

OPINION

Appeal from the United States District Court
for the Northern District of California
James Ware, District Judge, Presiding

8925

Argued and Submitted
February 17, 2006—San Francisco, California

Filed August 7, 2006

Before: J. Clifford Wallace, Michael Daly Hawkins, and
Sidney R. Thomas, Circuit Judges.

Opinion by Judge Wallace

## COUNSEL

Sanford Svetcov and Maria V. Morris, Appointed Pro Bono Counsel, San Francisco, California, for plaintiff-appellant James Myron.

James Myron, Corcoran, California, *pro se*.

Thomas S. Patterson, Supervising Deputy Attorney General, and Jennifer G. Perkell, Deputy Attorney General, San Francisco, California, for the defendants-appellees.

Barbara L. Herwig and Teal Luthy Miller, Attorneys, Appellate Staff Civil Division, United States Department of Justice, Washington, District of Columbia, for intervenor United States of America.

## OPINION

WALLACE, Senior Circuit Judge:

James Myron appeals from the district court's *sua sponte*

dismissal of his 42 U.S.C. § 1983 prison condition claims. Myron argues that state regulations governing prison administration create enforceable Fourteenth Amendment liberty interests, and that dismissal on that basis was therefore erroneous. We have jurisdiction pursuant to 28 U.S.C. § 1291, and we affirm.[1]

## I.

Myron, a California state prisoner, filed this 42 U.S.C. § 1983 action along with other plaintiffs in December 1999. The complaint named several correctional officers and medical personnel at the Salinas Valley State Prison as defendants. The district court, after conducting its mandatory *sua sponte* review of the complaint pursuant to 28 U.S.C. § 1915A, dismissed most of plaintiffs' claims. In doing so, the district court held that prison regulations governing inmate classification, prison publications, and law library access did not create cognizable Fourteenth Amendment liberty interests. Myron takes this appeal alone, arguing that these determinations were erroneous.

## II.

Each of Myron's claims depends on the existence of a federal liberty interest. We review the district court's determination that no such interest exists de novo. *See Perez-Gonzalez v. Ashcroft*, 379 F.3d 783, 786 (9th Cir. 2004).

[1] "Protected liberty interests 'may arise from two sources — the Due Process Clause itself and the laws of the States.' " *Ky. Dep't of Corr. v. Thompson*, 490 U.S. 454, 460 (1989), *quoting Hewitt v. Helms*, 459 U.S. 460, 466 (1983). "The Due Process Clause standing alone confers no liberty interest in freedom from state action taken within the sentence

---

[1]Myron's other claims are addressed by the accompanying memorandum disposition.

imposed." *Sandin v. Conner*, 515 U.S. 472, 480 (1995) (internal quotation marks and citation omitted); *see also Hernandez v. Johnston*, 833 F.2d 1316, 1318 (9th Cir. 1987) ("[A] prisoner has no constitutional right to a particular classification status"). Thus, any possible liberty interest would have to arise from state law.

**[2]** "[A] State creates a protected liberty interest by placing substantive limitations on official discretion." *Olim v. Wakinekona*, 461 U.S. 238, 249 (1983). We have refined this test and held that:

> A state law must satisfy two requirements in order to create a liberty interest protected by the Constitution. First, the law must set forth " 'substantive predicates' to govern official decision making" and, second, it must contain "explicitly mandatory language," *i.e.*, a specific directive to the decision-maker that mandates a particular outcome if the substantive predicates have been met.

*Valdez v. Rosenbaum*, 302 F.3d 1039, 1044 (9th Cir. 2002), *quoting Thompson*, 490 U.S. at 462-63. "[T]hese interests will be generally limited to freedom from restraint which . . . imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin*, 515 U.S. at 484.

We considered similar issues in *Hernandez*, where we held that Washington state law governing inmate classification status did not create a federal liberty interest. 833 F.2d at 1318. We specifically held that "[m]ere guidelines do not create a protected liberty interest." *Id.* at 1318. Instead, we held that the applicable provisions "must eliminate all discretion." *Id.*, *quoting Baumann v. Ariz. Dep't of Corr.,* 754 F.2d 841, 844 (9th Cir. 1985).

With this framework in mind, we turn to the applicable California regulations.

### III.

**[3]** Myron argues that certain California regulatory provisions, Cal. Admin. Code tit. 15, §§ 3375-3375.5 (2006), which govern the security classification of inmates, create an enforceable federal liberty interest. These provisions comprise a system for calculating "placement scores," which affect the security classifications of inmates. *See id.* §§ 3375.3-3375.5. The placement scores are used to determine to which security level facility inmates are assigned. *See id.* § 3375.1. Myron has alleged that prison officials violated his constitutional rights by placing him in a "level four" facility.

**[4]** The California provisions do contain some mandatory language: "The classification process shall be uniformly applied . . . . Each inmate shall be individually classified in accordance with this article." *Id.* § 3375(a). However, the regulations also contain ample language retaining discretion for prison officials making placement decisions. For example, one section provides:

> An inmate approved for transfer to a subfacility of a complex *may be received and processed* through a facility with a *security level higher than that which is consistent with the inmate's placement score*. Such cases shall be transferred to the subfacility *when bed space allows* or, when appropriate, recommended for an administrative determinant which prohibits movement to the lower security level facility.

*Id.* § 3375.1(b) (emphasis added). Furthermore, prison officials need only "*take into consideration* the inmate's needs, interests and desires, his/her behavior and placement score" in classifying prisoners. *Id.* § 3375(b) (emphasis added). Later language provides that "[a]n inmate meeting one or more of the following administrative or irregular placement conditions, known as administrative determinants, may be housed in a facility with a security level which is not consistent with

the inmate's placement score." *Id.* § 3375.2(a). That section provides twenty-seven discretionary grounds that prison officials may use "to override the placement of an inmate at a facility according to his/her placement score." *Id.* § 3375.2(b). The only mandatory language in that section provides that certain prisoners may not be placed in *lower* security facilities. *See id.* § 3375.2(a).

**[5]** We conclude that these regulations have not "eliminate[d] all discretion" of the prison officials. *Hernandez*, 833 F.2d at 1318 (internal quotation marks and citation omitted). Furthermore, the regulations do not "mandate[ ] a particular outcome if the substantive predicates have been met" because prison officials retain discretion to place inmates not in accordance with their placement scores. *See Valdez*, 302 F.3d at 1044. In any event, placement in a level four facility does not "impose[ ] [an] atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life," *Sandin*, 515 U.S. at 484, as thousands of other inmates are also placed in similar facilities. Therefore, the regulations do not give rise to a Fourteenth Amendment liberty interest. The district court properly dismissed Myron's fourth claim.

## IV.

**[6]** Myron next argues that a California regulation governing prison publications, Cal. Admin. Code tit. 15, § 3250 (2006), creates a Fourteenth Amendment liberty interest. That provision states that "[i]nmates may participate in the publication and distribution of an inmate publication *only with the institution head's specific approval.*" *Id.* § 3250(b) (emphasis added). Far from limiting discretion, the provision appears to grant unfettered discretion to prison officials to restrict prisoner publications. This provision does not impose "substantive predicates" or contain "explicitly mandatory language," *see Valdez*, 302 F.3d at 1044 (internal quotation marks and citation omitted), and certainly does not "eliminate all discretion." *Hernandez*, 833 F.2d at 1318 (internal quotation marks

and citation omitted). Therefore, section 3250 does not create a federal liberty interest.

## V.

**[7]** Myron also contends that prison officials violated his constitutional rights by "den[ying] [him] access to all library services during periods of lockdown" and "curtail[ing] the hours of library services due to a lack of staffing, space, and resources." Myron contends that these actions violate his Fourteenth Amendment rights created by 15 Cal. Admin. Code tit. 15, § 3120 (2006). That regulation provides: "Each warden shall ensure a library, law library and related services are maintained for the benefit of all inmates in their facility, including those inmates confined to segregated housing units. A library access schedule shall be approved by the warden and posted throughout the facility." *Id.* § 3120(a). This provision might create a liberty interest by requiring that prison officials must have a law library and must set a schedule. The same provision, however, affirmatively invests discretion in the warden to regulate access to library facilities. Because of this discretion, we conclude that this regulation creates no Fourteenth Amendment liberty interest in library access hours. *See Hernandez*, 833 F.2d at 1318.

**AFFIRMED.**