**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

| | |
|---|---|
| UNITED STATES OF AMERICA, | No. 09-10286 |
| Plaintiff - Appellee, | D.C. No. 1:07-cr-00268-JMS-1 |
| v. | |
| NELSON GAITAN-AYALA, | MEMORANDUM[*] |
| Defendant - Appellant. | |

Appeal from the United States District Court
for the District of Hawaii
J. Michael Seabright, District Judge, Presiding

Argued and Submitted June 18, 2010
Honolulu, Hawaii

Before: B. FLETCHER, PREGERSON and CLIFTON, Circuit Judges.

A jury convicted Appellant Nelson Gaitan-Ayala on five methamphetamine-related counts. When *Giglio*[1] evidence concerning government witness Corey Kaowili surfaced after trial, Gaitan-Ayala moved for a new trial on all counts. In a well reasoned order, the district court granted his motion except as to two counts:

---

[*] This disposition is not appropriate for publication and is not precedent except as provided by 9th Cir. R. 36-3.

[1] *Giglio v. United States*, 405 U.S. 150 (1972).

distributing 50 grams or more of methamphetamine (count 7), and conspiring to distribute 500 grams or more of methamphetamine (count 1). Gaitan-Ayala now appeals. He contends that the district court erred in sustaining those two counts, and that several trial errors combined with the suppression of impeachment evidence cumulatively rendered his trial unfair. We affirm.

## I.    Suppression of Impeachment Evidence

Gaitan-Ayala has waived any argument under *Napue v. Illinois*, 360 U.S. 264 (1959), by failing to raise it before the district court. The suppression of impeachment evidence therefore can be analyzed only under *Brady v. Maryland*, 373 U.S. 83 (1963), the standard Gaitan-Ayala argued to the district court. Under that standard we must order a new trial if the undisclosed evidence was "material" — that is, if "there is a reasonable probability that . . . the result of the proceeding would have been different" had the evidence been disclosed. *Jackson v. Brown*, 513 F.3d 1057, 1076 (9th Cir. 2008) (quotation marks, citation, and emphasis omitted).

All agree that the government proved the March 23, 2007 methamphetamine sale to undercover police officer Keane Tabanera. The series of recordings the government introduced created a strong chain of evidence that connected Gaitan-Ayala link by link to the March 23 sale. The existence of the sale makes clear that

2

when Gaitan-Ayala spoke about chicken fighting during the recordings, he was using "chickens" as code for methamphetamine. The recordings also show that Gaitan-Ayala was involved in arranging the March 23 sale. In sum, the sale itself sufficiently explained what the recordings meant; there was no need for Corey Kaowili's testimony to interpret them.

There was other evidence linking Gaitan-Ayala to the methamphetamine distribution on March 23, 2007, and to methamphetamine trafficking more generally. Although Zaneta Nixon was impeached to some extent, she testified that on March 23, 2007, Hector Cruz had told her that Gaitan-Ayala had said to sell a pound of methamphetamine to Kaowili. Other government witnesses also testified to Gaitan-Ayala's involvement in drug trafficking. These witnesses also were impeached to a limited extent, but their testimony as a whole constitutes strong evidence that Gaitan-Ayala was involved in the March 23, 2007 deal. Because there is not a reasonable probability that the jury would have come to a different verdict on count 7 if the additional impeachment evidence had been disclosed, the evidence was not material to the conviction on count 7.

Neither was it material to the conviction on count 1, the conspiracy count. Count 7 was one of the overt acts charged in count 1, and thus the evidence that is sufficient to uphold count 7 is sufficient to uphold one of the overt acts in count 1.

3

Further, even if Kaowili's testimony is disregarded, the rest of the collective testimony from the government's witnesses constituted powerful evidence that Gaitan-Ayala had conspired with numerous persons to distribute more than 500 grams of methamphetamine.

Gaitan-Ayala argues that because the district court ordered a new trial on three substantive counts, all of which were charged as overt acts in count 1, the conviction on count 1 must be overturned. We disagree. If a conviction for one or more substantive crimes is overturned because of factual rather than legal insufficiency, but at least one substantive crime that is charged in the conspiracy has a sufficient factual basis, the conspiracy conviction must stand. *Griffin v. United States*, 502 U.S. 46, 56, 59 (1991). Because one of the substantive crimes charged in count 1 has a sufficient factual basis — and because the undisclosed evidence did not materially affect the proof of the conspiracy itself — the conviction on count 1 must be sustained.

We note, however, that by failing to bring key impeachment evidence to the attention of the prosecutor, the federal law enforcement officers working on this case were guilty of a grave dereliction of duty and jeopardized the prosecution of the case. The government should take appropriate remedial or disciplinary action with its case agents to ensure effective internal communication, coordination, and

4

responses to discovery obligations, and should also impress upon the assistant U.S. attorneys that they must make sure that the case agents coordinate among themselves and keep the attorneys advised.

## II.     Cumulative Error

Gaitan-Ayala raises several other claims of error, arguing that these errors, combined with the suppression of impeachment evidence, cumulatively made his trial unfair and compel reversal. We respond to each.

1. No punitive intent "can be inferred from the nature of" Gaitan-Ayala's pretrial confinement. *Valdez v. Rosenbaum*, 302 F.3d 1039, 1045 (9th Cir. 2002). Gaitan-Ayala spent only a limited amount of time in the Special Housing Unit ("SHU"), and there was a reasonable relationship between his rotation through the SHU and the government's goal of preventing witness intimidation. *See id.* at 1046. Nor was the government required to be absolutely certain that witnesses were being intimidated before rotating Gaitan-Ayala though the SHU.

2. Admission of the gun photographs was not an abuse of the district court's "wide discretion" under Federal Rule of Evidence 403. *United States v. Layton*, 767 F.2d 549, 554 (9th Cir. 1985). Because police had found an indicium of drug-dealing, $37,000 in cash, near the gun, there was some nexus between the gun and drug-dealing. *Cf. United States v. Savinovich*, 845 F.2d 834, 837 (9th Cir. 1988).

5

Moreover, the government stressed not Gaitan-Ayala's mere possession of the gun but the fact that the gun was unregistered and lacked a permit. The government did not argue that the gun by itself showed that Gaitan-Ayala was involved in drugs. We cannot say that the district court abused its discretion in finding that the photographs' probative value was not "substantially outweighed" by the danger of prejudice or confusion. Fed. R. Evid. 403.

3. Gaitan-Ayala objected to the prosecutor's leading questions, and all of his objections were sustained. The government rephrased its questions. No error occurred in this respect.

4. Any prejudice from the two actual errors — the exclusion of Nathan Oandasan's prior statement and the interruptions of counsel's closing argument — was minimal. Oandasan was allowed to refresh his recollection by reading his previous inconsistent statement silently, and Gaitan-Ayala's attorney elicited impeaching testimony from him. Although the volume of the prosecutor's objections was inappropriate, the objections that the district court erroneously sustained affected the defense's closing argument very slightly if at all. Even when combined with the suppressed impeachment evidence, the cumulative effect of these trial errors was not "so prejudicial as to require reversal" of the convictions on counts 1 and 7. *United States v. Wallace*, 848 F.2d 1464, 1475 (9th Cir. 1988).

6

**AFFIRMED.**