**Eileen M. DeGRAFF, Appellant,**

v.

**DISTRICT OF COLUMBIA, et al., Appellees.**

**No. 96–7060.**

United States Court of Appeals, District of Columbia Circuit.

Argued April 15, 1997.

Decided Aug. 8, 1997.

Arthur B. Spitzer, Washington, DC, with whom Stephen M. Block, Houston, TX, was on the brief, argued the cause for appellant. Charles H. Wilson, Jr., entered an appearance.

James C. McKay, Jr., Assistant Corporation Counsel, Washington, DC, with whom Charles F.C. Ruff, Corporation Counsel at the time the brief was filed, and Charles L. Reischel, Deputy Corporation Counsel, were on the brief, argued the cause for appellees.

Before RANDOLPH and ROGERS, Circuit Judges, and BUCKLEY, Senior Circuit Judge.

Opinion for the court filed by Senior Judge BUCKLEY.

BUCKLEY, Senior Judge:

Plaintiff–Appellant Eileen M. DeGraff brought an action in district court alleging that the District of Columbia and two Metropolitan Police Department officers had committed a variety of torts and violated the Fourth Amendment based on her claim that, after the officers had arrested her for driving under the influence of alcohol, they used excessive force when they carried her down a street and handcuffed her to a mailbox. The district court granted the defendants' motions for summary judgment. There being insufficient facts in the record to support the court's conclusion, we reverse.

## I. BACKGROUND

### A. The Facts

Because we are reviewing a grant of summary judgment in favor of the defendants, we examine "the facts in the record

and all reasonable inferences derived therefrom in a light most favorable to the plaintiff." *Wardlaw v. Pickett,* 1 F.3d 1297, 1299 (D.C.Cir.1993) (internal quotation marks and citation omitted). Accordingly, the following account reflects Eileen DeGraff's version of the events that gave rise to this litigation.

On December 17, 1993, Ms. DeGraff attended a Christmas party at her place of employment and then visited two bars. At approximately 2:45 a.m. the following morning, when driving home, she applied her brakes to avoid a car that had pulled in front of her. Ms. DeGraff's car fish-tailed to the right before coming to rest a few feet behind the other car.

Shortly thereafter, Ms. DeGraff observed the flashing lights of a D.C. Metropolitan Police scout car in her rearview mirror and pulled over to the curb. Two police officers, Ephraim Williams and Edward Ford, approached her car. On smelling alcohol, Officer Williams asked Ms. DeGraff if she had been drinking. She answered that she had had "some wine." He then ordered Ms. DeGraff to step out of her car. As she was getting out, Officer Williams pulled her forcibly from the vehicle, calling her a "drunk" and "a murderer." Ms. DeGraff asked him whether she would be given a sobriety test. Officer Williams did not answer her question and walked her to the front of his scout car. Ms. DeGraff was steady on her feet and did not resist in any way as Officer Williams guided her to his car.

The officers pushed Ms. DeGraff onto the hood of the police car, pulled her arms behind her back, placed handcuffs on her wrists, and told her she was under arrest. When she continued to ask about the sobriety test, one of the officers stated, "This is all the test I need."

At that point, Ms. DeGraff became upset and began to cry. When she continued to question them, one officer mimicked her and the other laughed, but neither answered her. Finally, one officer said, "I've had it with these questions." The officers then lifted her off the ground and began to carry her in a horizontal position to some unknown destination even though she had had no difficulty standing on her own feet. When she asked what they were doing to her, they did not respond.

By that time, Ms. DeGraff was terrified and in pain. She screamed and cried; and when she tried to wrestle free of the officers' grips, one of them lost his balance and they all three fell to the ground. The officers picked Ms. DeGraff up again and resumed carrying her in a horizontal position. When they reached a mailbox, they sat her on the ground and, using a second set of handcuffs, shackled her to it. The officers then walked away toward their scout car, ignoring her pleas that they not leave her alone. She remained handcuffed to the mailbox until a Metropolitan Police Department transport vehicle arrived and took her to the Traffic Branch for processing.

After Ms. DeGraff was taken to the police station, two successive breathalyzer tests found that she had blood alcohol levels of 0.16 and 0.17 percent. It is illegal, in the District of Columbia, for a person with a blood alcohol level of 0.10 percent or higher to operate a motor vehicle. D.C.Code § 40–716(b)(1) (1990 & Supp.1996).

## B. The Proceedings before the District Court

This suit was filed on September 20, 1994. In her second amended complaint, Ms. DeGraff alleged, *inter alia,* that the officers had violated 42 U.S.C. § 1983 by depriving her of her right, under the Fourth Amendment, to be secure in her person against unreasonable seizures and that the District was in violation of the same statute because it had followed policies and practices that, by failing to provide police officers with adequate training and supervision, had caused her to be deprived of that right. She also alleged that the officers had committed the following common law torts against her: assault and battery, gross and ordinary negligence, and the intentional infliction of emotional distress. Because she admitted, in her deposition, that she had not suffered any physical injury as a result of the officers' actions, her primary common law claim appears to be for mental and emotional injuries.

The district court granted the defendants' motion for summary judgment on March 5, 1996. The court found that the officers had conducted a valid investigatory stop of Ms. DeGraff in light of her erratic driving and admitted intoxication. It also concluded that although their behavior in pulling Ms. De-Graff out of her car and handcuffing her was "possibly heavy-handed," it did not constitute excessive force. Nor did it find that their subsequent actions were inappropriate. According to the district court, it was

> unclear to where the officers' [sic] originally intended to take her, but soon after being lifted, Plaintiff began to struggle in an effort to "escape from their grip." As a result, one of the officers lost his footing and the three of them fell to the ground. It was at this point that Plaintiff was carried and handcuffed to a U.S. Postal Service mailbox.
>
> Although the record does not reveal the reason the officers felt it necessary to lift Plaintiff off the ground, the Court does not find such force to have been excessive. As the Supreme Court found in *Graham*, the motivation or intent of the police officers (even if sadistic or malicious) is irrelevant to this analysis. *Graham v. Connor*, 490 U.S. 386, 397, 109 S.Ct. 1865, 1872, 104 L.Ed.2d 443 (1989). While such conduct may have been physically coercive, it resulted in no physical injury to the Plaintiff. Even assuming that the officers had no cause to lift the handcuffed Plaintiff off the ground, and further assuming such force to be unnecessary, the Court finds that such excessiveness was not so apparent that a reasonable officer could have believed that his actions were unlawful. . . .
>
> . . . Although Plaintiff argues that she is slight of frame and therefore posed no threat to two male police officers, the facts indicate that Plaintiff's attempt to escape the officers' grip caused all three to fall to the ground. By this point, the officers were confronted with an individual actively resisting arrest. Despite her attempt to get free from the officers' grasp, neither officer struck Plaintiff or threatened to strike her. Instead the officers secured Plaintiff to the mailbox while they called for a transport vehicle.

> The Court concludes, as a matter of law, that handcuffing Plaintiff to the mailbox, given the totality of the circumstances here, was not clearly excessive. It is not the job of this Court to determine, in perfect hindsight, whether the officers should have found a more hospitable manner in which to secure the Plaintiff. The officers' decision is precisely the type of split-second judgment, under rapidly evolving circumstances, contemplated by the Supreme Court in *Graham*. [*Id.*]

*DeGraff v. District of Columbia*, C.A. No. 94–1949, mem. op. ("Mem. op.") at 20–22 (D.D.C. Mar. 5, 1996)(footnote incorporated in text). The court also concluded that the defendants were not subject to civil liability on the common law claims because of their qualified immunity. Accordingly, the case was dismissed with prejudice. This appeal followed.

## II. ANALYSIS

We review a district court's grant of summary judgment *de novo*. *Tao v. Freeh*, 27 F.3d 635, 638 (D.C.Cir.1994). In doing so, we must bear in mind that

> [s]ummary judgment should be granted only where there are no genuine issues of material fact, and all inferences must be viewed in a light most favorable to the nonmoving party. If material facts are at issue, or, though undisputed, are susceptible to divergent inferences, summary judgment is not available.

*Id.* (citations omitted).

### A. Excessive Force

██ Police officers will not be found to have used excessive force in violation of the Fourth Amendment if their actions were " 'objectively reasonable' in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation." *Graham*, 490 U.S. at 397, 109 S.Ct. at 1872 (citations omitted). In assessing the reasonableness of an act, a court must allow

> for the fact that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of

force that is necessary in a particular situation.

*Id.* at 397, 109 S.Ct. at 1872. As the Supreme Court explained, "[n]ot every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers," violates the Fourth Amendment. *Id.* at 396, 109 S.Ct. at 1872 (citation and internal quotation marks omitted).

■■■ Moreover, police officers are protected by a qualified immunity in section 1983 cases when they "perform[ ] discretionary functions ... insofar as their conduct does not violate clearly established ... rights of which a reasonable person would have known." *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982) (citations omitted). We have explained that "the scope of qualified immunity must be evaluated using the same 'objective reasonableness' criteria" employed in *Graham* to determine whether an officer has violated the Fourth Amendment. *Wardlaw,* 1 F.3d at 1303. Thus,

> a defendant's motion for summary judgment is to be denied only when, viewing the facts in the record and all reasonable inferences derived therefrom in the light most favorable to the plaintiff, a reasonable jury could conclude that the excessiveness of the force is so apparent that no reasonable officer could have believed in the lawfulness of his actions.

*Id.* (citation omitted).

■■■ Unfortunately, it is impossible to determine, on the meager record before us, whether a reasonable jury could have concluded that any reasonable officer would have found the force employed by Officers Ford and Williams in this case to be lawful. In order to decide whether a jury could find in Ms. DeGraff's favor, one would have to know far more than the district court's opinion reveals about the surrounding circumstances and why the officers decided to carry rather than walk her to their destination and to handcuff her to the mailbox.

What can be said at this time is that based solely on her version of the facts, it would be hard to justify their actions. Ms. DeGraff testified that, prior to the time she was lifted

off the ground, she was handcuffed with her upper body pressed against the hood of the police car. Although she may have been loquacious and may have cried, there was no evidence that she had resisted arrest or tried to free herself from the policemen's grip prior to that time. To the contrary, Officers Williams and Ford appear to have had her fully under their control and, according to her account of the events, she was steady on her feet and fully capable of walking to wherever the officers wished to take her.

In contrast to the circumstances in other cases in which we have found the use of significant force appropriate, these officers were not faced with an evasive suspect, *Martin v. Malhoyt,* 830 F.2d 237, 262 (D.C.Cir. 1987), or an escaping prisoner, *Scott v. District of Columbia,* 101 F.3d 748, 759 (D.C.Cir. 1996), *cert. denied,* —— U.S. ——, 117 S.Ct. 1824, 137 L.Ed.2d 1031 (May 19, 1997); nor was there any evidence that they feared for their safety. *Wardlaw,* 1 F.3d at 1304. Although we can readily imagine circumstances that would have justified their actions in this case, the record contains virtually no clues as to why they felt it necessary to carry Ms. DeGraff or to tether her to a mailbox.

■■■ The district court explicitly recognized that "the record d[id] not reveal the reason the officers felt it necessary to lift Plaintiff off the ground." Mem. op. at 7–8. It nevertheless found their actions to be reasonable because Ms. DeGraff struggled with them *after* they had begun to carry her. Her subsequent attempts to free herself, however, are irrelevant to the question of whether the officers used excessive force in violation of the Fourth Amendment when they hoisted her off the ground and carried her bodily down the street. *See Dixon v. Richer,* 922 F.2d 1456, 1463 (10th Cir.1991) (plaintiff's resistance to "being choked and beaten does not retroactively justify" officers' actions in choking and beating him).

### B. Municipal Liability

The district court's entry of summary judgment for the defendants reached all counts of the second amended complaint, including Ms. DeGraff's claim of municipal liability against the District of Columbia under

42 U.S.C. § 1983. Although the court did not address the issue, we may safely assume that it dismissed the claim on the theory that the District cannot be held liable for acts of its agents that the court had found to be acceptable. In light of our conclusion that summary judgment was inappropriate in the case of the section 1983 claim against the officers, however, we reinstate the municipal liability claim in order to enable the district court to address this issue in the first instance at the appropriate time.

## C. Common Law Claims

Ms. DeGraff also appeals the district court's grant of summary judgment on her common law claims. Because it appears that the parties had not completed discovery on these claims when the court granted the defendants' motions for summary judgment, we will not consider them at this time because they will be more appropriately addressed by the district court when a fuller record has been developed.

## III. CONCLUSION

For the reasons set forth above, we reverse the district court's grant of the defendants' motion for summary judgment and remand the case for further proceedings consistent with this opinion.

*It is so ordered.*