Allen WEAVER, et al., Plaintiffs,

v.

Officer G.S. HANNA, et al., Defendants.

No. CIV. A. 99–2615 (JR).

United States District Court,
District of Columbia.

Aug. 15, 2000.

Samuel M. Shapiro, Rockville, MD, for Plaintiffs.

Robert John Kniaz, Washington Metropolitan Area Transit Authority, Washington, DC, Cheryl Crandall Burke, Akin, Gump, Strauss, Hauer & Feld, L.L.P., Washington, DC, Vincent Anthony Jankoski, Washington, DC, for Defendants.

## *MEMORANDUM*

ROBERTSON, District Judge.

Plaintiffs, father and son, assert claims of false arrest and excessive force against defendants Officer G.S. Hanna and three unknown Washington Metropolitan Area police officers under the Fourth Amendment to the Constitution and 42 U.S.C. § 1983. Plaintiffs also assert common-law claims of false arrest and battery. The defendants, sued in their individual capacities, have moved for summary judgment. For the reasons set forth below, the motion will be **granted.**

### *Background*

Plaintiff, Allen Weaver, Sr., is Caucasian. His son, a minor, is biracial. On the afternoon of October 5, 1998, they boarded a red line train at the Judiciary Square Metro station in Washington, D.C.[1] Plaintiff (hereinafter "plaintiff" refers to the father) bought a 40–ounce bottle of beer before boarding the train, drank some of it before the train trip, and finished the bottle after leaving the Metro.

A woman on the train became suspicious of the plaintiff primarily because he was different in appearance from his son and because their conversation suggested to her that they did not know one another. She followed plaintiff and his son as they exited the Metro and boarded a bus. She advised the bus driver that plaintiff had kidnaped the child. The driver contacted Metro's operations control center and did not move the bus until the Metro transit police arrived.

Officer Gregory Hanna was advised by police radio of a possible child abduction.

---

1. Metro is operated by the Washington Metro-
politan Area Transit Authority.

According to his version of events, he reached the bus when plaintiff was walking away with his son on his shoulders. After speaking with the bus driver and the woman, and then observing a knife in plaintiff's pocket, he shouted for the plaintiff to stop. Plaintiff turned around briefly and took his son off his shoulders, but then he continued to walk at what appeared to be a faster pace. Plaintiff's version is that he walked down the street until he heard a woman say: "Not him, the white guy." At that point he turned around and saw the policemen with their weapons drawn.

The parties also have different versions of the conduct of the officers. Plaintiff claims that his son was "grabbed" and "thrown to the ground," while defendants allege that they "placed him on his feet."[2] In either case, the child was then placed in a police car.

Plaintiff avers that defendants then "slammed" him to the ground, frisked him, confiscated his knife, pulled him up by the handcuffs and "slammed" him into a car. Defendants state that they ordered plaintiff to the ground, that he complied, that they handcuffed him, and patted him down, and that they then assisted him to his feet.

It is undisputed that plaintiff told the officers that the child was his son and gave them the telephone number of the babysitter; and that, after the officers verified that the plaintiff was the child's father, they apologized and drove him and his son home.

*Analysis*

1. *Section 1983 claims*

■ Law enforcement officers acting within the scope of their employment have qualified immunity for claims asserted under section 1983, *DeGraff v. District of Columbia*, 120 F.3d 298, 302 (D.C.Cir. 1997); *Wardlaw v. Pickett*, 1 F.3d 1297, 1301 (D.C.Cir.1993). It is undisputed, and

in fact alleged, that the defendant officers were at all times acting within the scope of their employment as WMATA police officers. Complaint at ¶¶ 5–6.

■ Plaintiff maintains, however, that these officers are not entitled to qualified immunity because they lacked probable cause to arrest him. *See Wardlaw v. Pickett*, 1 F.3d 1297, 1305 (D.C.Cir.1993) ("[O]fficer retains qualified immunity from suit if he had an objectively reasonable basis for believing that the facts and circumstances surrounding the arrest were sufficient to establish probable cause.") (citing *Malley v. Briggs*, 475 U.S. 335, 341, 106 S.Ct. 1092, 89 L.Ed.2d 271 (1986)).

■ Defendants argue that the applicable standard is not "probable cause" but "reasonable suspicion," because they did not arrest the plaintiff but instead conducted a temporary investigative stop under *Terry v. Ohio*, 392 U.S. 1, 24, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). A reasonable suspicion, which requires less proof than probable cause, *United States v. White*, 648 F.2d 29, 42 (D.C.Cir.1981), is sufficient basis for a *Terry* stop, *see United States v. Christian*, 187 F.3d 663, 668 (D.C.Cir. 1999). Officers making a lawful *Terry* stop, like those making a lawful arrest, are entitled to qualified immunity.

■ Assuming for the sake of argument that the officers did not have probable cause for an arrest, it is necessary to determine whether their detention of plaintiff was an arrest or a *Terry* stop. In *United States v. Clipper*, 973 F.2d 944, 951 (D.C.Cir.1992), relying on *United States v. White*, 648 F.2d 29, 34 (D.C.Cir.1981), our Court of Appeals used a five-part test for determining whether a specific detention was a *Terry* stop or an arrest: "the officer's intent in stopping the citizen; the impression conveyed to the citizen as to whether he was in custody or only briefly

---

**2.** In his deposition, plaintiff was asked: "You didn't see him [his son] being dropped by the officer and landing on anything other than his

feet, correct?" Pltf.'s Dep. at 52. Plaintiff responded: "Pretty much, yes." *Id.*

detained for questioning; the length of the stop; the questions, if any, asked; and the extent of the search, if any, made." Not all of these factors can be evaluated on the basis of the present record, and of course the first two are subjective factors that might naturally give rise to disputed questions of fact. The record does support objective findings, however, that the encounter between the parties lasted approximately sixteen minutes (Pltf.'s Opp'n. Ex. 4 at 37), that Officer Hanna forced plaintiff to the ground to confiscate his knife (Pltf.'s Opp'n. Ex. 1 at 57), and that, once the officers determined that plaintiff was the child's father, the encounter ended promptly (Plft.'s Opp'n. at 4). These findings are consistent with *Terry* stops and not with arrests. While plaintiff maintains that the officer's use of handcuffs transformed the encounter into an arrest, persuasive authority from other circuits holds that the use of handcuffs is not determinative. *See United States v. Crittendon*, 883 F.2d 326, 329 (4th Cir.1989) (handcuffs did not turn stop into an arrest so long as restraints were reasonable); *United States v. Hastamorir*, 881 F.2d 1551, 1556 (11th Cir.1989) (handcuffs and guns used during an investigatory stop did not convert stop into an arrest); *cf. United States v. Trullo*, 809 F.2d 108, 113 (1st Cir.1987) (guns used during an investigatory stop did not convert stop into an arrest).

I find that plaintiff was not in fact arrested, but that he was instead subjected to a *Terry* stop to investigate a possible child abduction. If the officers making the stop had an objectively reasonable belief that there was reasonable suspicion to make the stop, *Terry*, 392 U.S. at 21, 88 S.Ct. 1868, then the stop was lawful and qualified immunity attaches to their actions.

■ The inquiry set forth in *Terry* to determine whether a stop was unreasonable "is a dual one—whether the officer's action was justified at its inception, and whether it was reasonably related in scope to the circumstances which justified the

interference in the first place." *Terry*, 392 U.S. at 20, 88 S.Ct. 1868. The *Terry* stop in this case easily passes the test. First, as to whether it was justified at its inception: the police had received a tip that a kidnaping was in progress. Plaintiff did nothing to dispel suspicion when he encountered the police. He walked away with the child on his shoulders (Pltf.'s Opp'n. at 3), did not put the child down when asked (Pltf.'s Dep. at 51), had a large knife in his pocket (*id.* at 56, 88 S.Ct. 1868), and, according to the officers, smelled of alcohol (Def.'s Dep. at 86). These factors easily justify the inception of a *Terry* stop.

■ Second, as for the scope of the *Terry* stop, I find that it was "strictly tied to and justified by" the circumstances which rendered its initiation permissible. *Terry*, 392 U.S. at 19, 88 S.Ct. 1868. Defendants detained the plaintiff for sixteen minutes (Pltf.'s Opp'n. Ex. 4 at 37), only removed a knife from his outer clothing (Pltf.'s Opp'n. Ex. 1 at 57), and ended the investigation after they determined that plaintiff was the father (Pltf.'s Opp'n. at 4).

Because the defendant officers conducted a lawful *Terry* stop grounded on objectively reasonable suspicion, they are immune from liability for the section 1983 false arrest claim.

■ Plaintiff's section 1983 claim of excessive force requires further analysis. The "qualification" in an officer's qualified immunity from a claim of excessive force relates to the level of excessiveness of the force. This presents, at least initially, a question for the court, since a rule that requires the submission of the excessiveness question to the jury would vitiate the goal of qualified immunity to "avoid such disruption (and the social cost it entails)," *Harris v. District of Columbia*, 932 F.2d 10, 13 (D.C.Cir.1991). Thus,

"[A] defendant's motion for summary judgment is to be denied only when, viewing the facts in the record and all reasonable inferences derived therefrom

in the light most favorable to the plaintiff, a reasonable jury could conclude that the excessiveness of the force is so apparent that no reasonable officer could have believed in the lawfulness of his actions." *Wardlaw v. Pickett*, 1 F.3d 1297, 1306 (D.C.Cir.1993)

*See also DeGraff v. District of Columbia*, 120 F.3d 298, 302 (D.C.Cir.1997); *Martin v. Malhoyt*, 830 F.2d 237, 253–254 (D.C.Cir.1987).

In this case I find that the officers' use of force was not such that no reasonable officer could have believed in the lawfulness of his actions. The officers' suspicion of a kidnaping in progress, their observation of a knife on plaintiff's person, their perception of alcohol, and the plaintiff's reaction upon encountering the police, all support the use of force. The dispute of fact here—whether plaintiff was "slammed" to the ground or placed him on the ground—is not for a jury.

■ Defendants are also entitled to absolute immunity for plaintiff's common-law claims of false arrest and battery. Defendants are police officers who were working within the scope of their employment, Complaint ¶ 5–6. Their actions clearly fit within the scope of a government function, *Burkhart v. WMATA*, 112 F.3d 1207, 1216 (D.C.Cir.1997). Section 80 of the WMATA Compact provides WMATA and its employees, with immunity from common-law claims arising out of the performance of a government function. *See Beebe v. WMATA*, 129 F.3d 1283, 1288 (D.C.Cir.1997).

An appropriate order accompanies this memorandum.

### ORDER

Upon consideration of Defendant's Motion for Summary

Judgment [# 6], it is this ____ day of ____, 2000, for the reasons set forth in the accompanying memorandum,

**ORDERED**, that the motion is **granted.**