**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

VERLIE TATUM, and VERLIE TATUM
as successor in interest of Glenn
Fullard, deceased,
                    *Plaintiff-Appellant,*

v.

CITY AND COUNTY OF SAN
FRANCISCO; LESLIE SMITH; MAC
CHAN; MARIO BUSALACCHI; TADAO
YAMAGUCHI; MIGUEL TORRES; JOHN
GARRITY; DOUGLASS CARR,
                    *Defendants-Appellees.*

No. 04-15055

D.C. No.
CV-02-04785-SBA

OPINION

Appeal from the United States District Court
for the Northern District of California
Saundra B. Armstrong, District Judge, Presiding

Argued and Submitted
November 16, 2005—San Francisco, California

Filed April 3, 2006

Before: John T. Noonan, Pamela Ann Rymer, and
Ronald M. Gould, Circuit Judges.

Opinion by Judge Gould

## COUNSEL

Gregory M. Haynes, Daly City, California, for the plaintiff-appellant.

Robert A. Bonta (argued) and Jonathan U. Lee, City and County of San Francisco, San Francisco, California, for the defendants-appellees.

## OPINION

GOULD, Circuit Judge:

Verlie Tatum appeals from the district court's order granting summary judgment to the defendants, and dismissing her claims brought under 42 U.S.C. § 1983. We have jurisdiction pursuant to 28 U.S.C. § 1291 and we affirm.

## I[1]

On the morning of March 2, 2001, San Francisco Police Officer Leslie Smith was waiting for a tow truck to remove a stolen car located in San Francisco's Tenderloin neighborhood. Across the street, Smith saw Glenn Fullard begin to kick the side door of the Tenderloin police station. Smith yelled at Fullard to stop kicking the door, but Fullard did not stop. Officer Smith then approached Fullard and asked him what he was doing. Fullard did not respond and he continued to kick the door, so Smith pulled Fullard away from the door and again asked him what he was doing. Fullard did not reply, but he began to walk away from the police station after Officer Smith told Fullard to "get out of here."

---

[1]Because we are reviewing an order granting summary judgment, we accept Tatum's factual allegations as true to the extent that the record before us contains factual disputes, and we give Tatum reasonable inferences based on those facts. *See Oliver v. Keller*, 289 F.3d 623, 626 (9th Cir. 2002).

As Smith was walking back across the street, he heard Fullard kicking the police station's door again. Based on Fullard's odd behavior, as well as his bloodshot eyes, heavy perspiration, and slurred speech, Smith suspected that Fullard might be intoxicated or under the influence of a controlled substance. Smith pulled Fullard away from the door again and explained to him that he could be arrested if he did not stop. Fullard still did not respond, so Smith asked to see Fullard's identification. Fullard did not comply with Officer Smith's request, at which point Smith told Fullard that he would be placed in handcuffs.

According to Officer Smith's deposition testimony, he positioned Fullard's left arm behind his back in a bar arm control hold and asked Fullard to place his right arm behind his back. Instead of complying, Fullard spun to his left, partially escaping Smith's grasp. Officer Smith instructed Fullard to stop resisting, but Fullard continued turning to his left. Smith was able to maintain control over Fullard by positioning him against a nearby wall. Smith told Fullard to calm down. Fullard continued to struggle. Smith then used the bar arm control hold to force Fullard to the ground. Smith placed a radio call for assistance. Officers Chan, Busalacchi, Torres, and Yamaguchi responded at once. Against continued resistance from Fullard, the officers placed him in handcuffs.

Officer Smith then sent a radio message that he no longer needed assistance. He and Chan remained at the scene to monitor Fullard while the other officers left. According to Officer Smith's testimony, Fullard lay on his stomach for about a minute after he was handcuffed. Officers Smith and Chan next positioned Fullard so that he lay on his side. About two minutes later, Smith sent a radio message requesting an ambulance after Smith noticed that Fullard's breathing was heavy and that his eyes were bulging. As Smith monitored Fullard's condition, Fullard's breathing became shallow. Smith sent another radio message asking that his previous request for an ambulance be given priority. Smith and Chan

monitored Fullard while they waited for the ambulance to arrive, but neither officer attempted to perform cardiopulmonary resuscitation (CPR) on Fullard. Smith did, however, place his right ear to Fullard's mouth to verify that he was still breathing. Smith also checked Fullard's pulse and observed his chest movements. When paramedics arrived about ten minutes later, they could not detect Fullard's breathing or pulse and one paramedic observed that Fullard was on his back. They pronounced Fullard dead at the scene. The coroner concluded that Fullard died of cocaine toxicity.

In March 2002, Verlie Tatum, Fullard's mother, commenced this civil rights action against the named defendants: Officers Smith, Chan, Busalacchi, Torres, and Yamaguchi, as well as their supervising officers, Garrity and Carr, and the City and County of San Francisco. Tatum brought suit in San Francisco Superior Court, seeking damages for her son's wrongful death and other torts under California law. Tatum also sought to recover damages under 42 U.S.C. § 1983 as Fullard's successor in interest,[2] alleging that he was wrongfully arrested and subjected to excessive force in violation of his rights under the Fourth and Fourteenth Amendments. On the basis of the federal question presented, one of the defendants removed this action to federal court. The district court granted summary judgment on all claims to all of the defendants in December 2003.

---

[2]A claim under 42 U.S.C. § 1983 survives the decedent if the claim accrued before the decedent's death, and if state law authorizes a survival action. *See* 42 U.S.C. § 1988(a); *Moreland v. Las Vegas Metro. Police Dep't*, 159 F.3d 365, 369 (9th Cir. 1998). Under California law, if an injury giving rise to liability occurs before a decedent's death, then the claim survives to the decedent's estate. *See* Cal. Civ. P. Code § 377.30. Where there is no personal representative for the estate, the decedent's "successor in interest" may prosecute the survival action if the person purporting to act as successor in interest satisfies the requirements of California law, which Tatum did here. *See* Cal. Civ. P. Code §§ 377.30, 377.32.

**II**

Before addressing the specifics of Tatum's appeal, we note that to recover damages under 42 U.S.C. § 1983, Tatum must prove by a preponderance of the evidence that the defendants deprived Fullard of a constitutional right while acting under color of state law. *See Gritchen v. Collier*, 254 F.3d 807, 812 (9th Cir. 2001).[3]

**A**

We first address Tatum's false arrest claim. Tatum contends that Fullard's arrest violated the Fourth and Fourteenth Amendments because Officer Smith did not have probable cause to believe that Fullard had committed a crime. Tatum urges that the motivation for Fullard's arrest was his failure to produce identification upon Smith's request and she argues that an arrest on this basis violates the Fourth Amendment under our decisions in *Carey v. Nevada Gaming Control Bd.*, 279 F.3d 873, 880 (9th Cir. 2002) (holding that a defendant's arrest under two Nevada statutes requiring a person to identify himself to a police officer violated the Fourth Amendment), and *Martinelli v. City of Beaumont*, 820 F.2d 1491, 1494 (9th Cir. 1987) (stating that a defendant's arrest for refusing to identify herself during a *Terry* stop violated the Fourth Amendment).

[1] Tatum's arguments do not persuade us. A police officer has probable cause to arrest a suspect without a warrant if the available facts suggest a "fair probability" that the suspect has committed a crime. *See United States v. Valencia-Amezcua*,

---

[3]We review a district court's order granting summary judgment de novo. *Delta Savings Bank v. United States*, 265 F.3d 1017, 1021 (9th Cir. 2001). Summary judgment was inappropriate if a reasonable jury could have found by a preponderance of the evidence that Tatum was entitled to a verdict in her favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 251-52 (1986).

278 F.3d 901, 906 (9th Cir. 2002); *United States v. Fixen*, 780 F.2d 1434, 1436 (9th Cir. 1986). An officer who observes criminal conduct may arrest the offender without a warrant, even if the pertinent offense carries only a minor penalty. *See Atwater v. City of Lago Vista*, 532 U.S. 318, 354 (2001) ("If an officer has probable cause to believe that an individual has committed even a very minor criminal offense in his presence, he may, without violating the Fourth Amendment, arrest the offender."). If the facts known to an arresting officer are sufficient to create probable cause, the arrest is lawful, regardless of the officer's subjective reasons for it. *See Devenpeck v. Alford*, 543 U.S. 146, 153 (2004) ("[a police officer's] subjective reason for making the arrest need not be the criminal offense as to which the known facts provide probable cause"). Under *Devenpeck*, the subjective reason that Officer Smith arrested Fullard is irrelevant so long as the available facts suggested that Fullard was committing a crime.

Thus, Tatum's citation to *Carey* and *Martinelli* is inappropriate because in those cases the only possible basis for probable cause was the defendant's refusal to produce identification. *See Carey*, 279 F.3d at 880 (observing that Carey was arrested for violating a statute requiring him to identify himself to the police, even though there was no probable cause to suspect that he had committed any other crime); *see also Martinelli*, 820 F.2d at 1492 (noting that a police officer arrested the defendant only " 'for delaying a lawful police investigation by refusing to identify herself' "). Here, however, crediting Tatum's version of events and assuming that Smith arrested Fullard because he did not produce his identification, the undisputed facts show that there was probable cause to arrest Fullard.

[2] Fullard's behavior and appearance created a "fair probability" that he had committed a crime. Fullard was kicking the door to a police station for no apparent reason; he disobeyed commands to stop; he was verbally unresponsive, except by incomprehensible mumbling; he was perspiring heavily; and

his eyes were bloodshot. There was a fair probability that Fullard was under the influence of a controlled substance, a crime under California law. Moreover, Fullard's behavior warranted Smith's belief that Fullard had violated other provisions of the California penal code, including those prohibiting disorderly conduct, vandalism, and disturbing the peace. Viewed objectively, the facts available to Officer Smith established probable cause to arrest Fullard, so Smith's subjective motivation for arresting Fullard is irrelevant and the defendants were entitled to summary judgment regarding Tatum's false arrest claim. *See Devenpeck*, 543 U.S. at 153.

**B**

**[3]** We turn to Tatum's excessive force claims. Tatum contends that Officer Smith's use of a control hold to secure Fullard prior to his arrest constituted excessive force. We disagree. The Fourth Amendment does not prohibit a police officer's use of reasonable force during an arrest. *See Graham v. Connor*, 490 U.S. 386, 396 (1989) ("the right to make an arrest or investigatory stop necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it" (citing *Terry v. Ohio*, 392 U.S. 1, 22-27 (1968))). When we analyze excessive force claims, our initial inquiry is "whether the officers' actions [were] 'objectively reasonable' in light of the facts and circumstances confronting them." *See id.* at 397. We consider the facts underlying an excessive force claim from the perspective of a reasonable officer on the scene, without regard to the arresting officer's subjective motivation for using force. *See id.* at 396-97. Whether a particular use of force was "objectively reasonable" depends on several factors, including the severity of the crime that prompted the use of force, the threat posed by a suspect to the police or to others, and whether the suspect was resisting arrest. *See id.* at 396.

Tatum cites *DeGraff v. District of Columbia*, 120 F.3d 298 (D.C. Cir. 1997), and *Rowland v. Perry*, 41 F.3d 167 (4th Cir.

1994), to support her contention that using a control hold was unreasonable under the circumstances of Fullard's arrest. Neither case is applicable here. In *DeGraff*, the Court of Appeals for the District of Columbia reversed an order granting summary judgment against a motorist's excessive force claim. *See DeGraff*, 120 F.3d at 303. Two police officers stopped DeGraff's car because they suspected that she was driving under the influence of alcohol. *Id.* at 300. After confirming that she had been drinking, the officers removed DeGraff from her car, arrested her, and secured her in handcuffs. *Id.* Throughout, DeGraff repeatedly asked whether she would be given a sobriety test, and she began to cry when the officers did not answer her. *Id.* In response, the officers mocked DeGraff, lifted her off the ground, carried her down the street, and shackled her to a mailbox. *Id.* The Court of Appeals reversed because the summary judgment record contained no evidence that DeGraff resisted arrest before the officers began carrying her down the street. *Id.* at 302 ("Although she may have been loquacious and may have cried, there was no evidence that she had resisted arrest or tried to free herself from the policemen's grip prior to that time."). Because the record did not indicate why the officers felt it necessary to carry DeGraff away from her car, the court could not say that the officers were entitled to judgment as a matter of law. *Id.* ("Although we can readily imagine circumstances that would have justified their actions in this case, the record contains virtually no clues as to why they felt it necessary to carry Ms. DeGraff or to tether her to a mailbox.").

The facts of this case are different. DeGraff was already under arrest and secured in handcuffs when the officers carried her down the street against her will, so in *DeGraff* there was no apparent reason for the officers' use of force. Here, however, the reason that Smith used force against Fullard is clear and not genuinely in dispute. Fullard was agitated, and Officer Smith applied the control hold to facilitate placing Fullard in handcuffs. Also, in *DeGraff*, the claimant struggled against the officers only after she was under arrest, while they

carried her down the street. Fullard, on the other hand, resisted Smith's lawful use of force during the arrest itself, by trying to spin out of Smith's grasp. Thus, in *DeGraff*, the record did not show adequate cause for the use of post-arrest force, while here Fullard's struggle to avoid arrest justified the use of a measured control hold.

*Rowland* is similarly inapposite. In *Rowland*, the Fourth Circuit reversed a district court's order granting summary judgment to a police officer defendant. Rowland alleged that he was assaulted by a police officer without provocation, after attempting to return a five dollar bill to the person who dropped it. *See Rowland*, 41 F.3d at 171. The officer's version of events differed dramatically, but because the Fourth Circuit was reviewing an order granting summary judgment to a defendant, it credited Rowland's factual allegations. *Id.* at 172, 174. The court observed that "[the plaintiff] suffered a serious leg injury over a lost five dollar bill," and concluded that a reasonable jury could find the officer's use of force unreasonable if the jury accepted Rowland's version of events. *Id.* at 174.

The summary judgment record here, however, could not support a finding that Fullard was the victim of an unprovoked police attack or, as Tatum urges, that "Fullard lost his life because he failed to produce his identification." Fullard was kicking a police station door for no reason; Fullard refused to obey Smith's commands to stop; there was probable cause to arrest; Fullard resisted arrest by spinning away from Smith; and Fullard died as a result of cocaine toxicity. Unlike the record in *Rowland*, which could support the conclusion that the pertinent use of force was unjustified and that it caused Rowland's injury, the record here does not permit the inference that Smith's use of force was unwarranted, or that Smith's use of a control hold caused Fullard's death. Given the significant differences between the summary judgment record in *Rowland* and the record before us, *Rowland*

does not help us to determine whether Smith's use of a control hold was objectively reasonable under *Graham.*

**[4]** We think it is clear that Officer Smith's use of a control hold was objectively reasonable under the circumstances of Fullard's arrest. While the criminal conduct underlying Fullard's arrest was not severe, he posed a threat to himself, to the police, and possibly to anyone who passed by him. Fullard spun away from Smith and continued to struggle after Smith told Fullard to "calm down." Even accepting Tatum's contention that Fullard sought to escape Smith's grasp to shift into a less painful position, Fullard still resisted arrest, which justified Smith's continued application of the control hold. Faced with a potentially violent suspect, behaving erratically and resisting arrest, it was objectively reasonable for Smith to use a control hold to secure Fullard's arm long enough to place him in handcuffs.

**[5]** Our cases support this conclusion. We have held more aggressive police conduct than Smith's objectively reasonable, even where the conduct resulted in serious physical injury. *See Johnson v. County of Los Angeles*, 340 F.3d 787, 793 (9th Cir. 2003) (concluding that hard pulling and twisting to remove a suspect from a crashed getaway car was objectively reasonable even though Johnson asserted that the officer's conduct rendered him paraplegic); *Jackson v. City of Bremerton*, 268 F.3d 646, 652-53 (9th Cir. 2001) (applying *Graham* and concluding that spraying Jackson's hair with a chemical irritant prior to her arrest, pushing her to the ground to handcuff her, and roughly pulling her to her feet during her arrest was not excessive force); *see also Forrester v. City of San Diego*, 25 F.3d 804, 807 (9th Cir. 1994) (concluding that ample evidence supported a jury's verdict that the use of "pain compliance techniques" to remove anti-abortion demonstrators who were blocking access to an abortion clinic was objectively reasonable); *Eberle v. City of Anaheim*, 901 F.2d 814, 819-20 (9th Cir. 1990) (upholding a jury's verdict that a police officer's use of a finger hold to control a belligerent

football fan was objectively reasonable). There is no evidence that Officer Smith threatened to use lethal force, or that he punched or kicked Fullard. There is no evidence that Smith applied more force than necessary to restrain Fullard while attempting to secure him in handcuffs. In light of the circumstances leading up to Fullard's arrest, we hold that Officer Smith's use of a control hold was objectively reasonable.

Tatum also contends that three aspects of Fullard's detention after his arrest constituted excessive force. These are: that Officers Smith and Chan positioned Fullard on his stomach for approximately ninety seconds (after which they positioned Fullard on his side); that the officers did not notice that Fullard rolled from his side onto his back or that he stopped breathing; and that the officers did not perform CPR on Fullard. Relying on *Estate of Phillips v. City of Milwaukee*, 123 F.3d 586 (7th Cir. 1997), the district court concluded that Officers Smith and Chan adequately monitored Fullard, and that laying Fullard on his stomach was objectively reasonable under the circumstances of his arrest. We agree.

The facts underlying *Phillips* are similar to those presented here. Phillips suffered from several serious medical conditions that were not "observable to the untrained eye," including an enlarged heart, an enlarged thyroid, Graves' disease, and schizophrenia. *See id.* at 590, 594. Having been evicted from the Ambassador Hotel the previous day for destroying hotel property, Phillips returned to his former room undetected by using a key that he had retained. *See id.* at 587-88. He was discovered by the housekeeping staff, who summoned security. Hotel security then called the police, who found Phillips "visibly shaking and sweating" when they entered the room. *Id.* at 588. The officers asked Phillips for his name, but he did not respond. *Id.* When the officers grabbed Phillips's wrists to secure him, he resisted. *Id.* Although Phillips struggled, the officers secured Phillips in handcuffs and positioned him face down on the floor. *Id.* at 589. One of the officers determined that Phillips needed "mental observation," and requested an

ambulance. *Id.* Before paramedics arrived, Phillips was in a "face down, handcuffed position" for at least two or three minutes. *Id.* Throughout this time, the officers monitored Phillips and called his name every twenty to thirty seconds. *Id.* When the ambulance attendants arrived, however, it was discovered that Phillips was not breathing. *Id.* Although the paramedics revived Phillips and transported him to a hospital, he died the next day. *Id.* at 590.

Affirming the district court's order granting summary judgment to the defendants, the court in *Phillips* held that the officers' conduct was "an objectively reasonable response to the escalating situation they faced." *Id.* at 593. Noting that the officers placed Phillips in a prone position to protect themselves and the hotel staff from Phillips's violent behavior, the court said that: "Restraining a person in a prone position is not, in and of itself, excessive force when the person restrained is resisting arrest." *Id.*

[6] This rationale applies with persuasive force here, and we conclude that it was objectively reasonable for the officers to position Fullard on his stomach for approximately ninety seconds. Officer Smith testified that Fullard kicked and struggled throughout the officers' efforts to secure him in handcuffs. The officers needed to incapacitate Fullard, both to protect themselves and to protect him. As the district court noted, the summary judgment record did not contain evidence that any officer applied crushing pressure to Fullard's back or neck as he lay prone. The evidence is unequivocal that Fullard lay on his stomach at most for just over a minute, after which Officers Smith and Chan positioned him on his side. Tatum has not cited any authority to support her argument that simply laying a suspect on his stomach can constitute excessive force, and we have found none. We hold that it was objectively reasonable to position Fullard on his stomach for approximately ninety seconds under the circumstances of his arrest.

**[7]** Similarly, we conclude that the officers exercised objectively reasonable care in monitoring Fullard, even if the officers did not notice that Fullard had rolled onto his back, or that he stopped breathing. Officer Smith testified that he examined Fullard just after securing him in handcuffs. Based on Fullard's apparent distress, Smith called for an ambulance. Smith testified that he placed his ear close to Fullard's mouth to verify that he was still breathing. Smith also testified that he checked Fullard's pulse. As the court said in *Phillips* regarding an analogous failure to monitor claim: "That no one noticed that Mr. Phillips was not getting enough oxygen cannot, standing alone, transform these officers' actions into a transgression of constitutional magnitude." *Id.* at 595. Absent evidence in the summary judgment record that the officers ignored Fullard's deteriorating medical condition, we agree. We hold that it was objectively reasonable for the officers to monitor Fullard's medical condition in the manner they did until an ambulance arrived.

**[8]** The district court concluded that the officers' decision not to perform CPR might constitute excessive force. We disagree. Just as the Fourth Amendment does not require a police officer to use the least intrusive method of arrest, *see Forrester*, 25 F.3d at 807, neither does it require an officer to provide what hindsight reveals to be the most effective medical care for an arrested suspect. Prior to its holding in *Graham*, that "*all* claims that law enforcement officers have used excessive force . . . should be analyzed under the Fourth Amendment," 490 U.S. at 395, the Supreme Court said that the Due Process Clause requires the provision of medical care to "persons . . . who have been injured while being apprehended by the police." *City of Revere v. Mass. Gen. Hosp.*, 463 U.S. 239, 244 (1983) (holding that city had a constitutional obligation to provide medical care to a person injured during an arrest, and that the city satisfied its duty to provide medical care by taking an injured suspect to a hospital). Likewise, before *Graham*, we said that "[d]ue process requires that police officers seek the necessary medical attention for a

detainee when he or she has been injured while being apprehended by either promptly summoning the necessary medical help or by taking the injured detainee to a hospital." *Maddox v. City of Los Angeles*, 792 F.2d 1408, 1415 (9th Cir. 1986). Although it was decided before *Graham*, we think that *Maddox* sets the standard for objectively reasonable post-arrest care. Accordingly, we hold that a police officer who promptly summons the necessary medical assistance has acted reasonably for purposes of the Fourth Amendment, even if the officer did not administer CPR. *See Maddox*, 792 F.2d at 1415 ("We have found no authority suggesting that the due process clause establishes an affirmative duty on the part of police officers to render CPR in any and all circumstances.").

[9] Officers Smith and Chan promptly summoned the necessary medical care by requesting an ambulance for Fullard. At his deposition, Officer Smith testified that he examined Fullard after he was secured in handcuffs and that Fullard's eyes were bulging and his breathing heavy. Smith suspected that Fullard was under the influence of a controlled substance and he called for an ambulance. Smith testified that he continued to monitor Fullard's condition, particularly his breathing, while waiting for the ambulance to arrive. When Fullard's breathing became shallow, Smith sent a second radio message, asking that his request for an ambulance be given priority. Shortly thereafter, Smith received a message confirming his request, and informing him that an ambulance was rushing to his location. Smith also testified that Fullard continued to breathe, albeit laboriously, until the ambulance arrived. Tatum points to testimony from one of the paramedics who treated Fullard that he was not breathing when the paramedic arrived. While this fact is disputed and we must accept Tatum's version of events, whether Fullard was breathing when the paramedics arrived does not alter our conclusion that Officers Smith and Chan behaved reasonably for purposes of the Fourth Amendment. *See Phillips*, 123 F.3d at 595 (explaining that "*who* discovered that Mr. Phillips was not breathing is a fact of no consequence," in light of uncontroverted evidence

that the officers continually monitored him). Assuming that Fullard had stopped breathing, and thus that Smith and Chan could have performed CPR on Fullard without risking further injury to him, the critical inquiry is not whether the officers did all that they could have done, but whether they did all that the Fourth Amendment requires. Here, the officers promptly requested medical assistance, and the Constitution required them to do no more. *See Maddox*, 792 F.2d at 1415. We hold that it was objectively reasonable for Officers Smith and Chan to request an ambulance for Fullard, rather than performing CPR themselves. *See id.*

[10] The officers' conduct underlying Tatum's claims did not deprive Fullard of a constitutional right. Consequently, Tatum was not entitled to recover damages from the arresting officers under 42 U.S.C. § 1983 and the district court correctly granted summary judgment to the defendants.[4] *See Valdez v. Rosenbaum*, 302 F.3d 1039, 1042, 1049 (9th Cir. 2002) (affirming summary judgment order where plaintiff suffered no deprivation of a constitutional right).

## C

[11] We next address Tatum's claims against Officers Garrity and Carr, alleging liability for the conduct of their subordinate officers, and Tatum's claim against the City and County of San Francisco, alleging municipal liability under *Monell v. Department of Soc. Servs.*, 436 U.S. 658 (1978). Absent a constitutional deprivation, neither Officers Garrity and Carr, nor the City and County of San Francisco may be held liable under § 1983. *See Jackson*, 268 F.3d at 653-54 ("Neither a municipality nor a supervisor, however, can be held liable under § 1983 where no injury or constitutional vio-

---

[4]Because the police conduct underlying this case did not violate Fullard's rights, we do not address whether the officers would be entitled to qualified immunity. *See Saucier v. Katz*, 533 U.S. 194, 201 (2001); *Johnson*, 340 F.3d at 793-94.

lation has occurred."). The district court correctly granted summary judgment in favor of Officers Garrity and Carr, and the City and County of San Francisco.

## III

**[12]** Finally, we turn to Tatum's claim that the district court erred by denying her request for a continuance pursuant to Federal Rule of Civil Procedure 56(f). We review a district court's order denying additional discovery for abuse of discretion. *See United States v. Kitsap Physicians Serv.*, 314 F.3d 995, 1000 (9th Cir. 2002). A party requesting a continuance pursuant to Rule 56(f) must identify by affidavit the specific facts that further discovery would reveal, and explain why those facts would preclude summary judgment. *See* Fed. R. Civ. P. 56(f); *California v. Campbell*, 138 F.3d 772, 779 (9th Cir. 1998); *see also* 10B Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure § 2740 (3d ed. 1998) ("when the movant has met the initial burden required for the granting of a summary judgment, the opposing party either must establish a genuine issue for trial under Rule 56(e) or explain why he cannot yet do so under Rule 56(f)").

**[13]** Because Tatum did not satisfy the requirements of Rule 56(f), the district court did not abuse its discretion by denying her request for a continuance. *See Kitsap*, 314 F.3d at 1000 ("Failure to comply with [the requirements of Rule 56(f)] is a proper ground for denying relief."). Tatum's request for a continuance did not identify the specific facts that further discovery would have revealed or explain why those facts would have precluded summary judgment. In a declaration supporting Tatum's opposition, her counsel stated that he had not yet received transcripts of several witness' depositions, including those of Officer Torres, Officer Busalacchi, and a paramedic who treated Fullard. The declaration does not, however, refer to any specific fact in these depositions or explain why the information contained in them was

"essential to justify [Tatum's] opposition." Fed. R. Civ. P. 56(f). The declaration does not indicate that deferring the resolution of the defendants' motion for summary judgment until the depositions had been transcribed and filed would have allowed Tatum to produce evidence creating a genuine issue of material fact as to whether any of the officers involved in Fullard's arrest used excessive force. The declaration does not explain how a continuance would have allowed Tatum to produce evidence creating a factual issue regarding probable cause. Absent a showing by Tatum that additional discovery would have revealed specific facts precluding summary judgment, the district court did not abuse its discretion by denying Tatum's request for a continuance under Rule 56(f).

## IV

Because the police conduct in this case did not deprive Fullard of a constitutional right, Tatum may not hold the arresting officers, their supervisors, or the City and County of San Francisco liable for the events leading up to Fullard's death under 42 U.S.C. § 1983. Moreover, the district court did not abuse its discretion by denying Tatum's request for additional discovery because Tatum did not comply with the requirements of Rule 56(f).

The parties shall bear their own costs on appeal.

**AFFIRMED**.