**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

_____
                                                    )
**MICHELE HALL,**                                    )
                                                    )
              **Plaintiff,**                         )
                                                    )
       **v.**                                        )          **Civil Case No. 13-324 (RCL)**
                                                    )
**DISTRICT OF COLUMBIA,** *et al.,*                  )
                                                    )
              **Defendants.**                        )
                                                    )
_____)

## MEMORANDUM OPINION

This case comes before the Court upon Motions [43, 44] for Summary Judgment by defendants Alice Lee, Seyhan Duru, and Cities, LLC. Upon consideration of plaintiff's and movants' filings, the entire record in this case, and the applicable law, defendants' Motions have been **GRANTED**.

The facts of this case are largely set forth in this Court's Memorandum Opinion of November 12, 2014, ECF No. 32, and the Court retreads them here only as needed. The applicable standard is familiar—when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law," a motion for summary judgment must be granted. Fed. R. Civ. P. 56(c); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). At this stage of litigation, the Court must "examine the facts in the record and all reasonable inferences derived therefrom in a light most favorable to" the nonmoving party. *DeGraff v. D.C.*, 120 F.3d 298, 301 (D.C. Cir. 1997). In other words, "the district court must 'believe[]' [the nonmovant's testimony] and must not make '[c]redibility determinations.'" *Robinson v. Pezzat*,

No. 15-7040, at 13–14 (D.C. Cir. Apr. 1, 2016) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)).

Here, Lee has moved for summary judgment on Count III of Hall's complaint (the common law battery claim against Lee), and Duru and Cities, LLC have moved for summary judgment on Counts IV (the intentional infliction of emotional distress claim against Duru), V (the negligent infliction of emotional distress claim against Duru), VI (the common law negligence claim against both Duru and Cities, LLC), VII (the common law conversion claim against Cities, LLC), and VIII (the common law defamation claim against Duru and Cities, LLC).

## I.     Defendant Lee's Motion

With respect to Lee's motion, the relevant issue is whether a reasonable jury could conclude that Lee used "clearly excessive" force in arresting Hall. *See* Mem. Op. 6, ECF No. 32 (citing *Jackson v. District of Columbia*, 412 A.2d 948, 956 (D.C. Cir. 1980)). Hall has offered evidence that Lee used force, testifying that Lee "grabbed and slammed [her] against the wall" of the bathroom, handcuffed her behind her back, and dragged her out of the bathroom to the street. Pl.'s Opp. 2. Then there is the testimony that once Lee had Hall out on the sidewalk, she lifted Hall's hands up to force her to kneel on the ground, after which Lee placed her knee on Hall's back and yet again pulled Hall's hands up into the air. Finally, Hall has offered evidence that Lee fractured her wrist in the course of arresting her.

The Court, aware of *Robinson v. Pezzat*'s reminder that a district court considering whether to grant summary judgment must be sure to credit the nonmovant's evidence even where it is seriously disputed, has taken care to examine the record in a light that is as favorable to Hall as reasonably possible. No. 15-7040, 13–14 (D.C. Cir. Apr. 1, 2016). Nevertheless, there is sufficient

unrebutted and unequivocal evidence in the record to fatally undermine Hall's claim that Lee used "clearly excessive" force, evidence no amount of favorable inference or credit can dispel.

For example, though Hall has previously claimed that Lee broke her wrist, she conspicuously no longer does so. Instead, she emphasizes that Dr. Michael Pirri, a physician in George Washington University Hospital's ("GWUH's") emergency room, treated her "as if she had a fractured wrist"; that, "at the very least, Dr. Pirri determined that the plaintiff suffered a fractured wrist;" and that Dr. Kathy Brindle, the board-certified radiologist with fifteen years' experience at GWUH who rejected Dr. Pirri's diagnosis of fracture after examining Hall's X-rays and finding that "the bones and soft tissues [were] normal" and without swelling, conceded at her deposition that some kinds of fractures were undetectable by X-ray. But this merely shows that it is theoretically possible that Hall had a wrist fracture (one capable of hoodwinking the specialist assigned to make that determination, no less), not that a factfinder could come to that conclusion. Dr. Pirri's records of Hall's treatment are more equivocal than Hall lets on—they note that Hall's X-ray would "be officially read by an attending radiologist" (Dr. Brindle) the following day, that the orthopedics and radiology residents disagreed with the fracture diagnosis, and that "[i]n the meantime, we are treating you clinically as if you have a fracture based on your symptoms." Dr. Brindle's diagnosis, on the other hand, is definitive, offered by someone with greater relevant expertise than the initial diagnostician, and unrebutted by any evidence Hall has offered. The only reasonable conclusion available to a jury would be that Dr. Pirri's diagnosis of a fracture was, as Dr. Pirri himself indicated, provisional and dependent upon confirmation by a doctor with greater expertise, namely, Dr. Brindle.

None of this is to diminish the pain or anxiety Hall may have suffered, even absent a broken wrist, during and after her arrest. Every arrest does, however, require some amount of force. *See*

*California v. Hodari D.*, 499 U.S. 621, 626 (1991). An officer must of course "have some justification for the quantum of force he uses," as "[f]orce without reason is unreasonable." *Johnson v. District of Columbia*, 528 F.3d 969, 977 (D.C. Cir. 2008). Hall's argument that Lee used "clearly excessive" force relies largely on testimony from Hall and her friend Gary Jones that she did not resist arrest. Because the Court is considering this issue due to defendant's motion for summary judgment, Hall argues, the Court must credit the plaintiff's proffered testimony (that she did not resist) and discredit the defendant's (that she did). But Hall's own testimony about whether she resisted is telling in ways she fails to appreciate. Consider the following excerpt, where Hall is describing her behavior in the restroom immediately before getting arrested:

> I begin to pull down my points, well my underwear, and there's a knock at the door. They just say, you know, let us in. You know, and we're like, you know somebody is in here. You know, just say very simply, "Someone's in here." And then right away they bang much harder, you know. I mean significantly harder and they're like you know, "Open up, it's the police." And we're just thinking, you know, it's some overzealous girl outside waiting to you know, pee, you know. And that happens, friends you know mess with you, like, open up, open up, it's Louise you know. I'm thinking it's a joke. So barely that I had a small giggle. I didn't even get to finish the giggle, before the door is busted in, door broken.

Hall Dep. 47:8–48:6. While for the purposes of this motion the Court entirely credits Hall's professed belief that the knocks were from boisterous partygoers and not police officers, the fact remains that Hall by her own admission ignored the officers' demands once they had identified themselves. Hall and the police actually agreed, though they did not know it, about what she was doing: Not complying. Where they disagreed was on whether the police were in fact police, and the officers cannot be faulted for not knowing that Hall was failing to comply because of her private, unvoiced belief that they were not actually law enforcement. That the police reasonably misunderstood Hall's behavior (again, taking Hall's proffered evidence as true) is evident

throughout Hall's testimony about her interactions with Lee, including when she testified about Lee's conduct after she had taken Hall out onto the street:

> Q: Did [Lee] let you stand up?
>
> A: Yes. Well she forces me. She grabbed me by my elbows and yanked me up.
>
> Q: You were trying to stand up and she helped you stand up?
>
> A: No. She told me to stop resisting after I said I was—after I'm trying to stand up, she tells me to stop resisting. And I said why am I resisting? I'm trying to stand up. And then that's when she yanks me up.

Hall Dep. 54:20–55:7. And once more shortly after the previous excerpt:

> Q: Okay. And now what happens?
>
> A: Well I, right as she's lifting me off the ground. I swing around to look at her, you know, because she still hasn't told me her name.

Hall Dep. 55:17–55:20. Again, though the Court accepts, for the purposes of this motion, that Hall did not intend to resist arrest and did not believe herself to be resisting arrest, by her own admission she moved and behaved in ways that a police officer could reasonably conclude were meant to defy arrest. Hall's undisclosed intentions to the contrary do not make Lee's use of force clearly excessive. Like any police officer, Lee had to determine the force necessary to make a justified arrest based on all of the information she had available—information which included, according to Hall herself, that Hall had ignored self-identified law enforcement demands to let them into the bathroom stall, tried to stand after Lee had forced her to kneel, and moved abruptly, even "swing[ing] around," during the arrest, without having been told to. Given this record, no reasonable factfinder could conclude that Lee used "clearly excessive" force in executing Hall's arrest.

## II.  Defendant Duru's and Cities, LLC's Motions

With respect to Hall's claims against Duru—intentional and negligent infliction of emotional distress, common law negligence, and common law defamation—as Duru and Cities, LLC point out, Hall offers no evidence whatsoever that Duru performed what she identifies as the predicate act for those claims, namely, calling the police and falsely accusing Hall of being a thief, which acts she says led to her arrest and handcuffing. At his deposition Duru denied either calling the police or ordering that they be called, and the record suggests that the 911 caller was a Cities, LLC employee named Carla Urquhart. To the extent that Hall is arguing that Duru's actual statements—"you're going to pay this bill," "this is why we don't do urban parties," and others in that vein—were defamatory, Hall offers no evidence that these statements were false. Hall's claims against Duru therefore fail as a matter of law.

Hall's claims against Cities, LLC are common law negligence, conversion, and defamation. Her negligence claim relies on the assertion that the defendants breached their duty of ordinary care when they "misinformed the police about the true circumstances surrounding the payment" of Hall's bill. This fails, however, because Cities, LLC did not proximately cause her injuries. Even viewing the evidence as favorably toward Hall as reasonably possible, it shows at most that she paid the $935.04 she owed exclusive of tip. Cities, LLC has represented, without rebuttal from Hall, that the $169.70 in tip was a required part of the bill, as is the policy at many establishments for parties beyond a certain size. Hall offers no evidence that the tip was not a legitimate expense. There is therefore no evidence in the record to support a conclusion that Cities, LLC lacked the requisite basis to report Hall's alleged theft of services. Additionally, even if Cities, LLC or one of its employees had been negligent by calling the police without such basis, based on the record Cities, LLC could not reasonably foresee that Hall would, as the Court concludes she did, behave in a way that an officer could reasonably interpret as resisting arrest. Finally, with respect to the

fact that Lee testified that one of Cities, LLC's employees told her that Hall's credit card had been declined, there is no evidence that that misrepresentation was the proximate cause of Hall's arrest. As already noted, Hall failed to pay the required tip, which was itself enough to justify calling the police for theft of services. In addition, Hall's argument that the misrepresentation made it more likely she would be arrested defies common sense—telling Lee that the card was declined implies that Hall had consented to have Cities, LLC charge it in the first place, which is a more favorable story than the story Cities, LLC claims it actually presented (namely, that Hall was refusing to have her card charged at all).

Hall's conversion claim requires her to show that Cities, LLC unlawfully exercised "ownership, dominion or control" over her personal property "in denial or repudiation of [her] rights thereto." *Busby v. Capital One, N.A.*, 932 F. Supp. 2d 114, 144 (D.D.C. 2013). Hall does not dispute, however, that she purchased and consumed the goods and services for which she was billed, nor does explain why she believes she did not owe a tip. While a tip is often at the customer's discretion, "tip" is sometimes automatically charged, and is in those cases no less legitimately part of the bill than the food and drink from which the tip is calculated, and all the evidence in the record suggests the tip owed on Hall's bill was of the latter sort. Hall's insistence that she disputed the bill, or at least part of it, does nothing to demonstrate that her dispute was valid. Not wanting to pay a disputed amount is quite different from having a right to that disputed amount, and Hall's failure to provide any evidence of her right to the disputed sum completely undercuts her conversion claim.

Finally, with respect to Hall's defamation claim against Cities, LLC, even drawing every possible favorable inference in her favor, Hall does not dispute that she failed to pay the tip on her bill, which means that Cities' call to the police informing them that she had failed to pay her bill

was substantially true. With respect to Hall's allegation that a server at Cities told the police that Hall's card had been declined, Hall has failed to prove—and has even denied—that she suffered any special harm as a result of the statements she deems defamatory. *See* Hall Dep. 37:11–37:18. The only harm Hall attempts to tie to the statement that her card was declined is the arrest itself, and as explained previously, the Court concludes that no reasonable factfinder could determine based on this record that said statement caused her arrest.

**CONCLUSION**

For the foregoing reasons, defendants' Motions for Summary Judgment have been **GRANTED**.

Signed by Royce C. Lamberth, Judge, on April 12, 2016.